DALE L. CRAMER, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA, DEFENDANT IN ERROR.

15 N. W. 2d 323

FILED JULY 21, 1944. No. 31805.

*Anderson, Storms & Anderson* and *Perry, Van Pelt & Marti*, for plaintiff in error.

*Walter R. Johnson, Attorney General, H. Emerson Kokjer, Rush C. Clarke* and *D. A. Russell, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

CARTER, J.

Plaintiff in error, who will be hereafter referred to as the defendant, was convicted of first degree murder and

sentenced to serve the balance of his life in the state penitentiary. Defendant brings the case to this court for review.

The record shows that defendant was married to Ilene Malone on May 2, 1942, and that they thereafter moved onto and farmed the land upon which they were living at the time the defendant was charged with the crime of which he now stands convicted. On May 9, 1943, a daughter, Janice Mae Cramer, was born. In the early morning hours of June 11, 1943, Janice Mae Cramer died of strychnine poisoning. The body of the child was taken to Dr. K. C. McGrew of Orleans, who directed that the baby's stomach be removed and caused its contents to be examined. The analysis of the contents of the stomach revealed the presence of strychnine in a quantity sufficient to cause death.

The county attorney undertook an investigation of the case in the course of which he took statements from various members of the Cramer family. At this time defendant accounted for the presence of strychnine in the baby's stomach by stating that he and his father had previously purchased some strychnine to kill prairie dogs, that they had mixed about half the strychnine with oats and left the remainder in a bottle in the tool shed. It also appears that a quantity of the oats to which strychnine had been applied had been left in a sack in the tool shed, that they had become spilled and defendant had replaced them with his hands as he was on the way to do the evening milking, that he had wiped his hands on his trousers and proceeded to milk the cow which provided milk for the baby. Defendant's story was that in this manner the strychnine found its way into the baby's food and subsequently into its stomach.

Defendant was subsequently taken into custody and after considerable questioning he admitted that he put a pinch of strychnine in one of the baby's feedings. The confession was thereupon reduced to writing by an official court reporter and signed by the defendant after certain changes were made and authorized by him. A complaint charging

first degree murder was then filed in the county court, to which defendant in open court entered a plea of guilty. The evidence further shows that defendant's father talked with defendant in the county jail in the presence of witnesses, at which time defendant admitted the commission of the crime in substantially the same language as was contained in the written confession.

The record further shows that in September or October, 1942, defendant learned that his wife was pregnant. He admits that he persuaded his wife to submit to an abortion and that they approached two physicians for the purpose of having such an operation performed. Both physicians advised against any such operation and refused to have anything to do with it. It also appears that defendant was farming an 811-acre farm, which he had recently contracted to purchase from his father, that he was unable to hire sufficient help and that his wife, immediately prior and after the birth of the child, had been able to help him much less with the chores and farm work. He complained about the child keeping him awake nights and evinced other evidences of irritation because of the baby.

It is shown by the evidence that the child was being fed a combination of prepared baby food and cow's milk. It was the custom of the mother each evening to prepare a number of feedings at one time, placing each feeding in a separate bottle. The baby was fed at ten p. m. on the evening previous to its death without showing any ill effects therefrom. It was fed again at two a. m. the next morning and it became ill very shortly thereafter. There is evidence in the record that the child had spasms or convulsions between the time it was fed and prior to its death 30 or 40 minutes later. This, however, was denied in the oral testimony produced at the trial.

There are many discrepancies and changes in the various statements made by the defendant which will not be related here, except as they may become pertinent to matters under discussion. The foregoing is a general statement of the evidence upon which a verdict of guilty was found by the jury.

The defendant alleges that the trial court committed reversible error in refusing a jury trial on the issues raised by the plea in abatement filed by him. The plea in abatement requested the court to quash the information for the reason that no preliminary hearing was had and that no waiver thereof had been made.

The record shows that on August 6, 1943, defendant was taken before the county judge of Harlan county, where a complaint charging first degree murder was read to him and he was asked whether he was guilty or not guilty. The judgment of the county court binding the defendant over to the district court for trial recites the following: " * * * The complaint was read to said defendant and he was then fully informed of the nature of this hearing and of his constitutional rights and that he had the right to employ and be represented by an attorney and that he would be given a continuance of this hearing for a reasonable time to prepare for hearing, to all of which the defendant stated that he was ready for hearing at once, that he fully understood the nature of the offense charged in said complaint, and thereupon voluntarily entered his plea of 'GUILTY' thereto. Upon consideration of said plea and the files and the evidence and the whole of said preliminary examination the Court finds that said crime has been committed and that there is probable cause to believe the defendant guilty thereof. * * * ."

The defendant testified that he was taken before the county judge, the complaint read to him, but that he did not answer either "guilty" or "not guilty" thereto. Many witnesses were called who testified that defendant answered "guilty" to the complaint in the manner recited in the judgment entered by the county judge. The defendant contends, however, that the evidence raises a question of fact which only a jury can properly determine.

A plea of abatement is a dilatory plea, not favored by the courts, which must be pleaded with strict exactness. The instant plea purports to dispute the findings and judgment of the county court. It is clearly the law of this state

that if a plea in abatement raises an issue of fact it must be determined by a jury. If it raises only a question of law, the court may properly determine it. In cases of prosecution by information, when it is claimed there was no preliminary examination of the accused, the question may be determined by a plea in abatement. *Cowan v. State,* 22 Neb. 519, 35 N. W. 405. But the record shows in the present case that defendant was taken before the county judge of Harlan county, the complaint read to him and inquiry made as to his guilt. The finding and judgment of the county court were that defendant entered a plea of guilty and thereby made the taking of further evidence unnecessary. The defendant cannot properly dispute this record by a plea in abatement in the district court. If the findings and judgment of the county court do not correctly reflect the record, proper steps should be taken to correct it in the county court. An issue of fact cannot be made thereon in the district court. Consequently, we are required to say that the record shows as a matter of law that defendant was accorded a preliminary hearing and that no error was committed in refusing a jury trial as claimed by the defendant.

In *Turk v. State,* 7 Ohio \*240, pt. 2, the court aptly said: "There is, however, another and still more fatal objection to these pleas. They contradict the record; and it is a principle of law, familiar with all, that a record is proved by itself, and is of such validity that it cannot be proved per notiora, and no fact can be averred against it."

In *State ex rel. Attorney-General v. Savage,* 89 Ala. 1, 7 So. 7, the court in a case similar in principle said: "In *Sparrenberger v. State, supra,* (53 Ala. 481) it was held, that inasmuch as such objections do not go in abatement, but to the legal existence of the indictment, the motion to quash and strike from the files must be addressed to the court, upon whose records, or into whose files, the paper has been introduced without warrant of law, before pleading to the indictment. Such motion is an invocation of the inherent power of the court over its own records, to make

them speak the truth. That court is clothed with exclusive jurisdiction and power to expunge it from the records. When the proceeding is not void, no other court has authority to declare that the record speaks a falsehood. Its verity can not be collaterally assailed. This court is without authority to quash an indictment, or strike a paper from the files of the Circuit Court, however illegally introduced, unless in the exercise of its appellate or supervisory jurisdiction. So long as it remains a part of the record, we must, except on appeal or writ of error, receive and regard it as absolutely true." See, also, *Maher v. State,* 144 Neb. 463, 13 N. W. 2d 641.

As a matter of law, the plea in abatement should have been overruled and, consequently, no error prejudicial to the rights of the defendant was committed when a jury trial of the issues raised by the plea was denied him.

Defendant contends that the information is insufficient to charge murder in the first degree. The material part of the information is as follows: " * * * In Harlan County, Nebraska, on June 11, 1943, Dale L. Cramer, defendant, with intent to take the life of and kill Janice Mae Cramer, did feloniously and purposely cause to be administered to her strychnine poison, and as a result thereof she died on June 11, 1943. Defendant thus committed murder in the first degree * * * ." This information is in the exact form prescribed by this court in *Davis v. State,* 116 Neb. 90, 215 N. W. 785. No other authority need be cited to establish the sufficiency of the information. See *Nichols v. State,* 109 Neb. 335, 191 N. W. 333; *Cowan v. State,* 140 Neb. 837, 2 N. W. 2d 111.

The defendant contends that the trial court erred in denying his application to inspect and make copies of the purported confession and other statements and documents in the possession of the state. We do not appear to have passed directly upon the respective rights of the parties in a matter of this kind. We think that when a prosecution is based upon a written instrument, as in a forgery case, the defendant is entitled to inspect and make copies of such

instrument under such conditions as the trial court may prescribe. If a prosecution is based upon the correctness or incorrectness of certain records, such as is ofttimes the case in a prosecution for embezzlement, the examination of such records by the defendant should be granted. But as to all statements and documents not admissible in evidence in chief, and obtained for impeachment or other purposes not going to the merits, the defendant has no basis for demanding an inspection of them. As to the right of a defendant to demand an inspection or a copy of a written confession made by him, the authorities do not seem to be in accord. The rule generally is that a confession need not be so produced. However, we think the trial court should order a written confession produced where the interests of justice require. If there be a question whether the signature thereto is forged, or if the written confession is necessary to a proper determination of the mental condition of the defendant at the time the confession was made, or for other reasons which tend toward establishing the merits of the litigation, we are of the opinion that such an application should be allowed. Where the only reason for the production of a written confession for the inspection of a defendant is that it would aid generally in preparing the defense, no basis exists for requiring the state to produce it. The defense counsel in a criminal prosecution have no right to inspect or compel the production of evidence in the possession of the state unless a valid reason exists for so doing. The defendant has no inherent right to invoke this means of examining the state's evidence merely in the hope that something may be uncovered which would aid his defense. In the administration of these rules the trial court has a broad judicial discretion and it is only when such discretion is abused that error can be based thereon.

In the present case, medical experts were permitted to read defendant's confession prior to the trial as a part of the evidence to be considered in determining the mental condition of the defendant at the time the confession was made. Defendant's counsel were given a copy of the con-

fession four days before it was offered in evidence by the state. Under this state of the record the trial court properly safeguarded the rights of the defendant with reference to defendant's application to inspect the confession and other statements and documents in the possession of the state.

Defendant urges that the trial court erred in permitting Dr. McGrew to testify that defendant requested him to perform an abortion on his wife, for the reason that such communication was privileged. Defendant's contention is without merit. This court has held many times that communications not necessary and proper to the discharge of the physician's professional duties or services are not privileged within the meaning of the statute forbidding the disclosure of confidential communications between physician and patient. *Nichols v. State, supra; Koskovich v. Rodestock,* 107 Neb. 116, 185 N. W. 343; Underhill, Criminal Evidence (3d ed.) sec. 297.

Defendant contends that the court erred in receiving the confession in evidence for the reason that the evidence shows that it was not voluntary. The record shows that the defendant was taken into custody on August 6, 1943, and that he was interrogated during the forenoon of that day. During this inquiry a deputy state sheriff made the following statements: "Tell the truth and we recommend leniency; but if you are bull-headed and won't admit the truth, we take it into court" and "You have your chance either to admit it now and we recommend leniency to the judge, or hold you to the fall term of court and jury trial." We quite agree with defense counsel that if the foregoing statements induced the confession it could not be properly admitted in evidence. The state recognized this in the presentation of its opening statement to the jury wherein the county attorney said: "and, by the way, there were some statements made by Mr. Clark, the deputy State sheriff, which were improper, and which the State does not authorize. However, gentlemen, I can say that, fortunately, the statements had no effect whatever upon this defendant."

The record shows that defendant was not influenced by the deputy state sheriff. He did not confess or even weaken his story during the forenoon during which the statements were made. The confession was obtained in the afternoon at which time no inducements of any kind were made. It is evident from the record that the reason for making the confession at the time it was made was to prevent the officers from going out and questioning his wife about the matter. In the written confession subsequently taken by the county attorney with the assistance of an official court reporter, the defendant was asked: "There have been no promises of rewards of any kind for your making this statement?" and he answered "No."

The record shows that oral confessions made by the defendant were received in evidence without objection on the part of the defendant. In the early afternoon he told the state sheriff and his deputy that he had taken a pinch of strychnine from the bottle in the tool shed, carried it into the house, and put it in one of the baby's milk bottles. This was not objected to. Another confession was made in the county court and no objection was made to this evidence on the ground that the confession was not a voluntary one. Another oral confession was offered in evidence without objection on the occasion of the defendant's father visiting him in the jail immediately following the preliminary hearing, at which time the defendant repeated substantially the same story as was contained in the written confession received in evidence. This evidence tends to support the state's claim that the evidence sustains the voluntary character of the confession. Clearly, the most that can be said concerning the question whether the confession was voluntary is that it was a question of fact for the jury to determine. The jury determined the question adversely to the claims of the defendant upon evidence which amply sustains their finding that the confession was voluntarily made.

Whether a confession is admissible in evidence is in the first instance for the court, and, if the court determines that it was not voluntarily given, the confession should be

rejected. Where the confession is received in evidence, the question whether it was voluntarily made is still a question to be decided by the jury.

It is urged, however, that the promise of leniency extended in the forenoon, though it failed to induce a confession, continued sufficiently coercive at the time the confession was made in the afternoon so as to require its rejection as having been involuntarily made. We do not agree with this conclusion. There is ample evidence in the record that the promises of leniency extended in the forenoon had no effect whatever on the defendant.. A confession otherwise voluntary is not affected by the fact that improper inducements had been previously made where it appears that such improper influences were not operating when the confession was made. Under such circumstances the question is one for the jury, and where, as here, the jury have determined the question upon conflicting evidence, their finding will not ordinarily be disturbed on appeal. *Shepherd v. State*, 31 Neb. 389, 47 N. W. 1118; *King v. State*, 108 Neb. 428, 187 N. W. 934; *Lewis v. United States*, 74 Fed. 2d 173; *Lyons v. State*, (Okla. Cr.) 138 Pac. 2d 142; *Lyons v. State of Oklahoma*, 322 U. S. 596, 64 S. Ct. 1208.

We have examined the instructions and find that the court fairly and impartially submitted the question of the voluntary character of the confession to the jury. It appears that the rules prescribed by this court in *Schlegel v. State*, 143 Neb. 497, 10 N. W. 2d 264, were meticulously followed by the trial court. No error is found in the admission of the confession in evidence or in the manner of its submission to the jury by the trial court.

Defendant complains of the misconduct of the county attorney in his argument to the jury. During the course of the argument the county attorney stated that there were only two people who could possibly be involved in the crime, the defendant and his wife, and when Dale Cramer comes into court and pleads not guilty he thereby, by inference, accuses his wife of first degree murder. The county attorney also argued that if defendant goes out of this court a

free man, then Ilene Cramer, by inference, will be branded as the murderess of this child. We do not think this line of argument constitutes error. The statements were deductions that could properly be made from the evidence. Each statement complained of contained within it language showing that it was a mere inference to be drawn from the evidence. It is not probable that a jury sworn to try the case on the evidence and the law applicable thereto would mistake the argument of counsel as evidence, or be misled thereby to defendant's prejudice. At any rate, upon objection being made to this line of argument, the trial court admonished the jury that the attorneys had the right to discuss the facts and inferences therefrom and that it was for the jury to say whether those facts were proved and whether the inferences were correct. Under the circumstances shown, the trial court amply protected the rights of the defendant with reference to the alleged misconduct of the county attorney in his argument to the jury.

Finally, the defendant contends that the evidence is insufficient to show beyond a reasonable doubt that a crime was committed and that defendant was the perpetrator. We think the record establishes beyond a reasonable doubt, as the jury found, that defendant put strychnine in the baby's food and thereby caused its death. That defendant did not want the baby and attempted to prevent its arrival by having an abortion performed upon his wife is shown by the record. The opportunity to commit the crime was present and all the circumstances integrate themselves into confessions made by the defendant. The story told by the defendant endeavoring to account for the presence of strychnine in the baby's stomach contains many unexplained contradictions. Assuming that it was possible to transmit into the pail of milk, in the manner described by the defendant, the quantity of strychnine which the contents of the baby's stomach indicated was contained therein, no satisfactory explanation appears why the baby was not taken ill after its ten o'clock feeding. Certainly, if the pail of milk from which the baby's milk was taken was poisoned

with strychnine in the manner described by the defendant, the baby would have shown signs of illness after the ten p. m. feeding. The only logical conclusion is that defendant placed a pinch of strychnine in one of the baby's bottles, just as he said he did in his confession, and when the mother of the child unsuspectingly fed that bottle of food to the baby at the two a. m. feeding, the death of the child followed within 30 or 40 minutes thereafter. The jury evidently believed this version after seeing and hearing the witnesses and examining all the evidence, and we think they were amply justified by the evidence in doing so.

We have examined all other assignments of error and find that they are without merit. The judgment of the trial court is affirmed.

AFFIRMED.