STATE OF NEBRASKA, APPELLEE, v. GEORGE MCCREARY, APPELLANT.

139 N. W. 2d 362

Filed January 14, 1966. No. 36043.

Kerrigan, Line & Martin, for appellant.

Clarence A. H. Meyer, Attorney General, and Bernard L. Packett, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

CARTER, J.

Defendant was convicted of breaking and entering a public telephone pay station in Fremont, Nebraska. Defendant was also charged with being an habitual criminal and was sentenced to 15 years confinement under the provisions of the habitual criminal statute. Defendant has appealed.

On the afternoon of December 10, 1964, defendant was in an apartment occupied by Sharon Stanek in the company of Sharon and Georgia Jones. It appears that one Cliff Freeman became the subject of conversation, Freeman being a cousin of Sharon and the boy friend of Georgia. Freeman was in jail in Omaha and money was needed to get him released. Defendant volunteered to get some money for them. He asked Sharon and Georgia to accompany him for this purpose. The three of them entered defendant's automobile and drove directly to the Schmit Frontier Station. Defendant asked Georgia to engage the attendant in conversation and Sharon to stand by the telephone booth in the station. Sharon stepped into the booth with the defendant. She saw him working on the lower part of the telephone with something she described as being silver in appearance. The attendant and Sharon testified that they heard no dialing tones from the telephone caused by the dropping of coins into the pay telephone. Sharon testified that she heard a clatter of coins before she left the booth. Georgia said that she heard the clattering of coins before defendant came from the booth and heard coins jingling in defendant's pocket after he left the booth. The three left the station and returned to the apartment, where all three of them counted the money amounting to $20 or $25.

The attendant, Fred F. Ramakers, testified that the three came into the station about 9:10 p.m., on De-

cember 10, 1964. He said Georgia engaged him in conversation and that defendant and Sharon entered the telephone booth which they occupied for 10 or 12 minutes. He heard no dial tones which he usually heard when the telephone was being used. He heard the sound of coins rattling out of a box. When the three left the station he notified the telephone company. Two employees of the company came to the station within 30 minutes. They opened the telephone and found the coin box missing and $4 in change on the floor of the telephone housing. The coins removed were covered with a sticky substance. The last time the company removed money from the coin box was on November 2, 1964, when it contained $16.10. The coin box was missing at that time and a new one was installed. The coin box was missing on December 10, 1964, and has not been accounted for. Sharon and Georgia saw no coin box and a search of the areas traveled by defendant after he left the station failed to produce it.

Law enforcement officers searched the apartment and found $22.05 in quarters, dimes, and nickels in a dresser drawer. The coins also had a sticky substance on them. In a subsequent search two lock picks were found under a rug in the apartment, the fact of their existence in the room having been given by Georgia. The lock and the picks were sent to the laboratory of the Federal Bureau of Investigation. The laboratory technician who made the examination testified that there were marks on all six tumblers on the lock, which could not have been made by the key to the lock. He testified that the picks in evidence could have been used to open the lock, but there was no evidence from which he could conclude that the marks were made by these specific picks.

The State produced evidence furnished by customers that considerable money in excess of $4 had been put into the pay telephone after November 2, 1964, and before December 10, 1964.

The defendant complains of the action of the trial court

in overruling his motion for an order to produce for defendant's inspection all items of physical evidence which the State proposed to introduce at the trial. The trial court has a broad judicial discretion in ordering the production of evidence in the possession of the State. Defendant has no inherent right to invoke this means of examining the State's evidence merely in the hope that something may be uncovered which may be helpful to him. Valid reason must exist for sustaining such a motion. In certain types of cases, such as forgery and embezzlement, reason for the production of written instruments may require the sustaining of such a motion. But the State is not generally required to produce its evidence solely to permit a defendant to build his case in a manner to avoid its implication. In Cramer v. State, 145 Neb. 88, 15 N. W. 2d 323, the rule is stated as follows: "The defense counsel in a criminal prosecution have no right to inspect or compel the production of evidence in the possession of the state unless a valid reason exists for so doing. The defendant has no inherent right to invoke this means of examining the state's evidence merely in the hope that something may be uncovered which would aid his defense. In the administration of these rules the trial court has a broad judicial discretion and it is only when such discretion is abused that error can be based thereon." Under the record in this case the trial court did not abuse its discretion in denying the motion.

The defendant made two separate motions to suppress evidence in the possession of the State, both of which were overruled by the trial court after the taking of evidence thereon. Defendant assigns these rulings as error.

As to the first motion, it appears that D. W. Parker, deputy sheriff of Dodge County, filed an affidavit and obtained a search warrant from a justice of the peace to search the apartment occupied by Sharon, and by the defendant as her guest. Defendant contends that the

affidavit was insufficient to sustain the issuance of the warrant. The affidavit recites the break-in of the telephone booth, the presence of defendant, Sharon, and Georgia at the booth at the time of the alleged break-in, that they were seen leaving the apartment together shortly thereafter, and that an immediate search was necessary before the items lost in the break-in could be removed. The affidavit states that the items mentioned in the affidavit were based on information furnished by a "reliable informant." The defendant relies on Aguilar v. Texas, 378 U. S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723; and Ker v. California, 374 U. S. 23, 83 S. Ct. 1623, 10 L. Ed. 2d 726. These cases hold in effect that a warrant must be issued on the judgment of the magistrate and not on the mere suspicion, belief, or conclusion of the affiant seeking the search warrant.

In the instant case the affidavit stated that affiant believed the apartment occupied by Sharon concealed or kept "Tools and picks and equipment for burglarizing telephone booths and a coin receptacle from the telephone booth in the Mark Schmidt Frontier Filling Station." The affidavit states that defendant, Sharon, and Georgia were in the filling station about the time the money was taken, and that a "reliable informant" informed the affiant that he heard money making noise in a box while defendant and Sharon were in the telephone booth and Georgia was talking to him. The affidavit recites that officer Fred Whitt saw the three leaving the apartment and that the break-in occurred about 9:15 p.m. on December 10, 1964. The affidavit states that the search should be made immediately in the nighttime before the items could be moved.

The justice of the peace clearly had enough evidence on which to base his judgment that the search warrant should issue. At the hearing on the motion the "reliable informant" was disclosed as Fred F. Ramakers, the attendant at the Schmit Frontier Station. The case is controlled by United States v. Ventresca, 380 U. S. 102,

85 S. Ct. 741, 13 L. Ed. 2d 684, wherein it is said: "Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." The identity of the informant need not be disclosed. Aguilar v. Texas, *supra*. We conclude that the affidavit was sufficient to sustain the issuance of a search warrant.

Defendant contends that the evidence pertaining to the money consisting of quarters, dimes, and nickels in the amount of $22.05 should have been suppressed for the reason that it was not listed in the warrant as an item of search. Defendant cites Woo Lai Chun v. United States, 274 F. 2d 708, 79 A. L. R. 2d 999. In that case the court said: "The letters seized were not described in the search warrant. They then were improperly seized unless they were instrumentalities of the crime itself. (citing authority). In Takahashi v. United States, 9 Cir., 1944, 143 F. 2d 118, at page 123, we laid down the general proposition 'that a reasonable seizure can only be made of instrumentalities of the crime itself and not of private papers which are mere evidence or indicia of the commission of a crime.'" Defendant asserts that the money was not an instrumentality of the crime within the foregoing rule. The money was identifiable not only as small change in an unusual amount, but also as being sticky, as was the money found in the telephone housing. It was strong circumstantial evidence that it came

from the pay telephone. It was, as the jury subsequently found, an element of the crime charged, to wit, to forcibly break into a public telephone pay station with intent to steal property of value contained in said telephone pay station. We think the money, in its denominations, amount, and condition, was a proper item for search under the search warrant, under and by authority of which the search was made.

Defendant moved to suppress evidence obtained in a search made on December 11, 1964. The deputy sheriff and another law enforcement officer contacted Russell Bradbury and informed him they were about to search apartment 3 in the Claassen Apartments. Bradbury is the father of Sharon Stanek. He told the officers that the apartment was his, that he paid the rent, that the door was open, that they did not need a search warrant, and for them to go ahead and search it. They proceeded to do so, Bradbury coming to the apartment when he finished his lunch shortly thereafter. Two picks suitable for picking locks were subsequently found under the rug in the apartment, under Bradbury's consent to search the apartment. Defendant asserts that the trial court erred in not suppressing this evidence for the reason that the search was unlawful.

The basis for the claim of error is that defendant had occupied the apartment for 2 or 3 weeks as the guest of Sharon. It is asserted that the consent of Bradbury was ineffectual to lawfully permit a search of the premises as to the defendant. Defendant relies on Stoner v. California, 376 U. S. 483, 84 S. Ct. 889, 11 L. Ed. 2d 856. The case is not applicable to the case at bar. There it was held that defendant's hotel room was in effect his home and that a search without a warrant, even with the permission of the hotel management, was not lawful.

The case before us is controlled by the holdings in Cutting v. United States, 169 F. 2d 951; Calhoun v. United States, 172 F. 2d 457; Woodard v. United States, 254 F. 2d 312; Fredricksen v. United States, 266 F.

2d 463; and Rees v. Peyton, 341 F. 2d 859. The tenor of these cases is that one who has no control over an apartment, neither owning nor renting it, may not complain of a permission to search it by the owner or renter. The prohibitions of the state and federal Constitutions are against unreasonable searches and seizures. A search with the express consent of the owner or lessee, in possession, is deemed to be a reasonable search.

Defendant contends that the trial court erred in not sustaining his objection to an alleged hypothetical question on the ground that it assumed facts not established by the evidence. The laboratory technician in the Federal Bureau of Investigation laboratory who examined the lock on the pay telephone and the picks found in the apartment was asked the following question: "I will ask you again then from your knowledge as an expert in the field of nomenclature and assembly of locks and tool mark identification can you state whether or not a person with knowledge of locks, with the knowledge of 'picks' and their use and experience in their use could use these 'picks' marked Exhibit's '4' and '5' to pick this lock Exhibit '6' or a similar lock so as to open the door, remove what may be inside and close and lock the door again?" His answer was: "That instrument such as this, that is Exhibit '4' and Exhibit '5', could be used to pick a lock of this type or similar type lock."

The lock from the telephone was in evidence. The picks found under a rug in an apartment recently occupied by the defendant were also in evidence. The picks had been received as a circumstance surrounding the transaction. Unless the picks so found could be used to open the lock, they would have much less weight as circumstantial evidence. That the witness was an expert in the field is not questioned. The witness did not testify that the picks were used in opening the lock or that he gained any evidence from which he could infer that they were. The extent of his evidence was that the picks were such that they could be used to pick the lock

by one who understood how to use them. We see no error in this. No reference was made to the defendant. Every opinion of an expert in his particular field need not be based upon a hypothetical question even though some facts must be assumed to afford the basis of opinion. The answer to the question in the instant case merely shows that the picks were instruments which could be used in picking the lock in evidence. There was no error in permitting this evidence.

Defendant further contends that the proof was insufficient to sustain a conviction on circumstantial evidence. The applicable rule is: "The test by which to determine the sufficiency of circumstantial evidence in a criminal prosecution is whether the facts and circumstances tending to connect accused with the crime charged are of such conclusive nature as to exclude every reasonable hypothesis except that of his guilt." State v. Sedlacek, 178 Neb. 322, 133 N. W. 2d 380. The jury was correctly instructed on this point. The evidence heretofore recited is ample to sustain the verdict of the jury.

Defendant contends there was error in the instructions given and in the refusal to give instructions tendered by the defendant. The instructions given fairly and correctly submitted the case to the jury. The instructions tendered were either covered by instructions given by the court or properly refused.

We find no error in the record prejudicial to the rights of the defendant. The judgment of the district court is affirmed.

AFFIRMED.