STATE OF NEBRASKA, APPELLEE, v. VICTOR C. HOWARD, APPELLANT.
167 N. W. 2d 80

Filed April 11, 1969. No. 37011.

Munro, Parker, Munro & Grossart, for appellant.

Clarence A. H. Meyer, Attorney General, and Melvin K. Kammerlohr, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ., and COLWELL, District Judge.

COLWELL, District Judge.

Victor C. Howard was found guilty by the district court for Sherman County of the crime of fourth degree arson, a felony, in violation of section 28-504.04, R. R. S. 1943. Defendant pleaded not guilty and waived jury trial. Probation was imposed for a term of 2 years. Motion for a new trial was denied and an appeal perfected to this court.

Defendant lived and was employed at Poole, Buffalo County, Nebraska; he owned and possessed a small acreage on the edge of Rockville, Sherman County, Nebraska, improved by a vacant house in poor condition, a barn and a chicken house, the area around the improvements was fenced; and he kept some cattle there. Between 4 and 5 p.m., on August 27, 1967, Laverne Thompsen, accompanied by Samuel Sullivan, went to defendant's acreage to examine the house as an interested buyer. Thompsen had hearsay information that the defendant wanted to sell the house. They opened the gate, entered the premises, lifted the latch on a broken screen door, and entered the house. The door and several windows were open. After a brief inspection they detected the

odor of smoke, which directed them to the basement where they observed two bales of straw on a ledge near the floor joists concealing an electric light bulb connected to a socket and an electrical cord extending out of the basement through a window; and they observed a small pile of ashes near the bales of straw and that the floor joists showed some evidence of burning. They left the premises and immediately reported their observations to Ruppert Claussen, fire chief for the Rockville volunteer fire department and the Rockville rural fire protection district. Chief Claussen, Thompsen, and Sullivan immediately returned to the Howard acreage and reentered the premises in the same manner. Chief Claussen made an inspection and verified the information given him; in addition he determined that the electrical cord reentered the house through a bedroom window and was coiled in a space between the window and the screen; he also determined that there was electrical power "on" in the house. These three men then returned to Rockville about 6 p.m. Chief Claussen contacted Virgil J. Kaminski, county sheriff of Sherman County, Nebraska, who arrived in Rockville at about 10 p.m. Claussen informed Kaminski of the facts known to him; and these officers relayed this information by telephone to the office of the State Fire Marshal, Lincoln, Nebraska. Between 3 and 4 a.m. on the following morning assistant state fire marshal Wallace Barnett and deputies William Watson and Harley J. Mannier arrived in Rockville and conferred with sheriff Kaminski and chief Claussen. No surveillance had been maintained of the Howard premises; and there was concern among the officers whether or not a fire might then be burning. Sheriff Kaminski, fire marshals Barnett, Watson, and Mannier went to the Howard property at about 4 a.m., stepped over the fence, shined flashlights on the house and into the basement, looked into the basement, and walked around the house. They did not enter the house and no fire was observed. These four officers left the premises and returned to

Loup City, county seat of Sherman County, Nebraska. Later that morning Barnett consulted with county attorney Robert M. Martin, who prepared an affidavit for Barnett to apply for a search warrant. About 10 a.m. the affidavit was filed by Barnett with P. J. Kowalski, county judge of Sherman County, Nebraska, who issued a search warrant directed to Wally Barnett, assistant state fire marshal, to search defendant's premises and seize property, both being described. Immediately thereafter Barnett, Watson, Mannier, and Kaminski went to the Howard acreage, entered the premises, and made a search of the house. Photographs were taken; and the investigation further revealed in a closet on the main floor of the house a pile of paper, feed sacks, and other papers covering another light bulb connected to a socket and electric extension cord. Two drop cords with recepticles and light bulbs and one gallon jug with oil were seized and inventoried. Later on in the afternoon defendant was located at Poole, Nebraska; he was taken into custody and Miranda warnings were given; and, after a brief interview, defendant made oral admissions. Defendant was taken to the sheriff's office in Loup City, Nebraska, where further Miranda warnings were given him, and the defendant on the same day executed a written confession. At the preliminary hearing before the county judge, P. J. Kowalski, defendant did not testify and he offered no evidence. Defendant was represented by his own counsel at the preliminary hearing and at the trial.

Prior to trial, defendant filed a plea in abatement and a motion to suppress evidence. Upon hearing, the plea in abatement was denied and the motion to suppress granted as to witness Wallace Barnett. Appeal from this ruling on the motion was taken by the State pursuant to sections 29-824 and 29-826, R. R. S. 1943, for ruling by one Judge of the Supreme Court. Ruling of the trial court was reversed, and defendant's motion to suppress was denied.

The main thrust of defendant's argument is that there was an unlawful search and seizure made; that evidence obtained thereby, both physical evidence, instruments of the crime, and the admissions subsequently obtained from the defendant, was unlawfully considered both at the preliminary hearing and at the trial of the case. We will consider this argument in the several areas covered in defendant's brief, being mindful that both the Fourth Amendment to the United States Constitution and Article I, section 7, of the Nebraska Constitution, relate to the right of the people to be secure against *unreasonable* searches and seizures, and that search warrants shall issue only upon *probable cause* supported by oath or affirmation.

The original discovery of the property later seized was made by Thompsen and Sullivan who trespassed upon the premises for a purpose unrelated to the crime and they removed no property. Defendant cites no cases supporting his view that this entry was an unlawful search. The protection of the Fourth Amendment is a restriction on governmental action only. Burdeau v. McDowell, 256 U. S. 465, 41 S. Ct. 574, 65 L. Ed. 1048, 13 A. L. R. 1159.

A search implies some exploratory investigation. It is not a search to observe that which is open and patent, in either sunlight or artificial light. State v. Carpenter, 181 Neb. 639, 150 N. W. 2d 129.

Fire is a destructive burning involving combustion which manifests itself in heat and flame. Fire consumes and destroys. Fires, reports of fires, the existence of incendiary devices, and fire prevention demand the urgent and emergency response and vigilance of all firemen and law enforcement officers to protect the public.

In Shypulski v. Waldorf Paper Products Co., 232 Minn. 394, 45 N. W. 2d 549, that court said: "The first thing to be recognized is that firemen, policemen, and similar personnel have a status sui generis. * * *. Firemen make their entry under license of law, * * *. Firemen are re-

garded as making their entry primarily for the purpose of performing a duty owed to the public. Although the benefit of their services may accrue entirely to an individual property owner, that fact is regarded as incidental."

When Thompsen and Sullivan reported to chief Claussen, they told him what was there, that there had been a fire, that it smelled like smoke, and it looked like it was set to start again. Claussen knew that the house was vacant and he made an immediate investigation. Firemen have a duty to promptly investigate fire reports; and they have the duty and right to enter property to combat fires. Is their duty and right any less when, after entry, their investigation reveals that there is no fire? We think not. Chief Claussen properly performed his duties here; and there was no search and no trespass.

"The States are not * * * precluded from developing workable rules governing arrests, searches and seizures to meet 'the practical demands of effective criminal investigation and law enforcement' in the States, provided that those rules do not violate the constitutional proscription of reasonable searches and seizures and the concomitant command that evidence so seized is inadmissible against one who has standing to complain." Ker v. California, 374 U. S. 23, 83 S. Ct. 1623, 10 L. Ed. 2d 726.

"The right of an individual to be free from unwarranted intrusions on his person and property should be balanced against the need for effective law enforcement which can only exist where an officer's actions are measured objectively against a standard of reasonableness." State v. Harding, ante p. 159, 165 N. W. 2d 723.

Giacona v. United States, 257 F. 2d 450 (5th Cir.), is similar in part to this case. Federal officers received information that marijuana was concealed in the foundation blocks under a store building; a surveillance was maintained; and one of the officers crawled up to the

building, reached underneath it, and removed a paper bag containing marijuana. The bag was inspected, initialed, and replaced; and thereafter one of the officers filed an affidavit and obtained a search warrant. The court said: "When the performance of his duty requires an officer of the law to enter upon private property, his conduct, otherwise a trespass, is justifiable. 52 Am. Jur., Trespass, § 41. In any event, evidence is not rendered inadmissible merely because it has been obtained by a simple trespass upon land. The protection of the Fourth Amendment is not that extensive. * * * The Fourth Amendment protects against 'unreasonable searches and seizures.' Reasonableness is often a question of degree as to 'when the right of privacy must reasonably yield to the right of search.' Johnson v. United States, 1948, 333 U. S. 10, 14, 68 S. Ct. 367, 369, 92 L. Ed. 436. * * * 'Reasonableness is in the first instance for the District Court to determine.' United States v. Rabinowitz, 1950, 339 U. S. 56, 63, 70 S. Ct. 430, 434, 94 L. Ed. 653. See, also, Harris v. United States, 1947, 331 U. S. 145, 150, 67 S. Ct. 1098, 91 L. Ed. 1399. * * * What may be unreasonable in a search of a man's house, may be entirely reasonable in a search of his place of business. Harris v. United States, supra. * * * The nature of the search also is an important circumstance in determining reasonableness. (The) preliminary search was not of a general exploratory nature but might more accurately be considered a mere inspection to verify the information which he had received."

Section 81-502, R. S. Supp., 1967, provides: "It shall be the duty of the State Fire Marshal * * * (1) to enforce all laws of the state relating to the suppression of arson and investigation of the cause, origin and circumstances of fires; * * *." Section 81-505, R. R. S. 1943, provides: "The duties of the first assistant and the deputy fire marshals shall be to operate under the direction of and to assist the State Fire Marshal * * *." Section 23-1710, R. R. S. 1943, provides: "It shall be the duty of the sheriff

by himself or deputy to preserve the peace in his county, to ferret out crime, to apprehend and arrest all criminals, and insofar as it is within his power, to secure evidence of all crimes committed in his county, * * * and to perform all other duties pertaining to the office of sheriff."

As to the entry upon the premises by sheriff Kaminski, and fire marshals Barnett, Watson, and Mannier, defendant argues that the entry was a trespass under a pretext of investigating a possible fire, that it was unlawful, and that the evidence obtained by trespass could not be used as a basis for an affidavit to obtain a search warrant, citing United States v. Bush, 283 F. 2d 51. Although defendant does not claim the entry to be an unreasonable search, the reasonableness of the acts of the officers under the circumstances will be examined. Defendant cites Camara v. Municipal Court of San Francisco, 387 U. S. 523, 87 S. Ct. 1727, 18 L. Ed. 2d 930, as authority that the inspection was unlawful requiring a search warrant. Camara is distinguished from the facts here, it prohibits warrantless nonemergency inspections by housing code inspectors. In the present case, none of these officers had ever been at the Howard property; but they had reliable information about the existence of an incendiary device in the basement of the Howard property which could have been "triggered" at any time by connecting the cord to the electrical source available by any so designing person. A felony had been committed; no surveillance had been maintained at the scene; they had no information whether a fire might be then burning; and they were concerned about the possibility of a fire at the Howard property. They took the precaution of inspecting the premises to determine whether or not there was a fire; they did not enter the house; their inspection furnished them with no added information; they made no search for either evidence or instruments of the crime; and finding no fire they left the premises to await search warrant process. We are not persuaded that the officers entered the premises under pretext. The

entry of these officers was not a search; at most, it was a technical trespass, more in the nature of an inspection, made in the proper performance of their duties, reasonable and justified by the circumstances. Any information gained by them could be lawfully used in an affidavit for a search warrant.

Next the defendant claims that the search and seizure accomplished by the officers with the use of a search warrant was unlawful because the affidavit was void for the following reasons: (1) No oath was administered, and (2) the stated grounds for probable cause were based on hearsay and observations made by unlawful trespass.

County attorney Martin prepared the affidavit for the signature of Wally Barnett, assistant state fire marshal. These two men went to the office of county judge Kowalski. Martin introduced Barnett to judge Kowalski and announced the purpose of their presence. Barnett was wearing the regular uniform of a state fire marshal with badge. Barnett handed the affidavit to judge Kowalski who read it, and then asked Barnett if he was the affiant. Barnett acknowledged that he was, the affidavit was returned to Barnett who signed it, and judge Kowalski then signed the jurat and affixed the seal of his office. The following testimony of Kowalski is pertinent: "Q Now, at this time that he signed this affidavit you did not at that time ask him specifically, 'Do you swear to this'? A No, that probably is one of my weaknesses, because I feel that a man signs it right in my presence and is—how would I say that?—anyhow it is authentic; that's what I mean."

As to the first claim that Barnett was not placed on oath, the first paragraph of the affidavit recites: "The Complaint and Affidavit of Wally Barnett of the Office of the State Fire Marshal * * * who being first duly sworn, on oath, says: * * *." The jurat recites: "Subscribed and sworn to before me this 28th day of August, 1967. P. J. Kowalski." An affidavit is a written declaration under oath, made without notice to the adverse party.

§ 25-1241, R. R. S. 1943. We have held that an affidavit must bear upon its face by the certificate of the officer before whom it was taken evidence that it was duly sworn to by the party making the same. Sebesta v. Supreme Court of Honor, 77 Neb. 249, 109 N. W. 166. "Oaths to affidavits ordinarily are not required to be administered with any particular ceremony, but affiant must perform some corporal act before the officer whereby he consciously takes upon himself the obligation of an oath; but it is not essential that he raise his hand." 2 C. J. S., Affidavits, § 20, p. 959. "If the attention of the person making the affidavit is called to the fact that it must be sworn to and, in recognition of this, he is asked to do some corporal act and he does it, the instrument constitutes a statement under oath, irrespective of any other formalities." 3 Am. Jur. 2d, Affidavits, § 11, p. 389. See, also, Dalbey Bros. Lumber Co. v. Crispin, 234 Iowa 151, 12 N. W. 2d 277. The affidavit here meets the requirements of execution under oath.

As to the second claim we have disposed of the objection of trespass, and now direct our attention to whether the affidavit stated grounds for probable cause. Recently in Spinelli v. United States, 393 U. S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637, the court stated: "In holding as we have done, we do not retreat from the established propositions that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause, Beck v. Ohio, 379 U. S. 89, 96, 85 S. Ct. 223, 228, 13 L. Ed. 2d 142 (1964); that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial, McCray v. Illinois, 386 U. S. 300, 311, 87 S. Ct. 1056, 1062 (1967); that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense, United States v. Ventresca, 380 U. S. 102, 108, 85 S. Ct. 741, 745 (1964); and that their determination of probable cause should be paid great deference by

reviewing courts, Jones v. United States, 362 U. S. 257, 270-271, 80 S. Ct. 725, 735-736 (1960)." In a concurring opinion in Spinelli, Justice White discusses some further guides: "An investigator's affidavit that he has seen gambling equipment being moved into a house * * * will support the issuance of a search warrant. * * * Personal observation attests to the facts asserted * * *. But if the officer simply avers, without more, that there is gambling paraphernalia * * *, the warrant should not issue, even though the belief of the officer is an honest one, * * * and even though the magistrate knows him to be an experienced, intelligent officer who has been reliable in the past. This much was settled in Nathanson v. United States, 290 U. S. 41, 54 S. Ct. 11, 78 L. Ed. 159 (1933) * * *. What is missing in Nathanson and like cases is a statement of the basis for the affiant's believing the facts contained in the affidavit—the good 'cause' which the officer in Nathanson said he had. If an officer swears that there is gambling equipment at a certain address, the possibilities are (1) that he has seen the equipment; (2) that he has observed or perceived facts from which the presence of the equipment may reasonably be inferred; and (3) that he has obtained the information from someone else. If (1) is true, the affidavit is good. But in (2), the affidavit is insufficient unless the perceived facts are given, for it is the magistrate, not the officer, who is to judge the existence of probable cause. Aguilar v. Texas, 378 U. S. 109, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); Giordenello v. United States, 357 U. S. 480, 486, 78 S. Ct. 1245, 1250, 2 L. Ed. 2d 1503 (1958); Johnson v. United States, 333 U. S. 10, 14, 68 S. Ct. 367, 369, 92 L. Ed. 436 (1947). With respect to (3), where the officer's information is hearsay, no warrant should issue absent good cause for crediting that hearsay."

In United States v. Ventresca, 380 U. S. 102, 85 S. Ct. 741, 13 L. E. 2d 684, the court stated: "Observations of fellow officers of the Government engaged in a common

investigation are plainly a reliable basis for a warrant applied for by one of their number." In Giacona v. United States, *supra*, the court stated: "Whether or not the information * * * received 'from a reliable source' would have sufficed need not be decided. Certainly, after that information had been verified by * * * personal inspection, it constituted 'probable cause'."

Defendant urges that the affidavit is void because it recites the conclusion of the sheriff, "* * * that the Sheriff had reason to believe that an act of arson might be committed or might have been committed." This is a conclusion and hearsay; however, this recitation can be disregarded in considering this issue here since the affidavit also recites an inspection made of the premises, which defendant concedes was an inspection made by the affiant, deputy fire marshals Watson and Mannier and sheriff Kaminski. The inspection relates a personal observation and that is sufficient. For the same reason we disregard defendant's argument that State v. McCreary, 179 Neb. 589, 139 N. W. 2d 362, controls here. In McCreary, a part of the information related in the affidavit was attributed to a "reliable informant"; here, the information is personal observation.

From reading the affidavit in its entirety, the county judge had a substantial basis for finding probable cause by independent judgment. We cannot say that the finding of probable cause was improper. The search warrant was properly issued to Wally Barnett, a law enforcement officer under section 29-814, R. R. S. 1943. The search conducted pursuant to the search warrant was lawful.

Defendant contends that a preliminary hearing conducted by a county judge not an attorney and not trained in the law is in violation of his equal protection of the laws and due process of law guaranteed under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, section 3, of the Constitution of Nebraska. Section 29-1607, R. R. S. 1943, provides:

"No information shall be filed against any person for any offense until such person shall have had a preliminary examination therefore * * * before a *justice of the peace or other examining magistrate or officer,* * * *." (Emphasis supplied.) In State, v. Sheldon, 179 Neb. 377, 138 N. W. 2d 428, we said: "The purpose of a preliminary hearing is to ascertain whether a crime has been committed and whether there is probable cause to believe, that the accused committed it. It is not a trial of the person accused * * *." Defendant had available to him procedures to test the sufficiency of the evidence at the preliminary hearing which he did by plea in abatement. We find no merit in this contention.

The claim of the defendant that the admissions made by him were the "fruit" of an unlawful search finds no support in the evidence.

We find no prejudicial error in the record. The motion to suppress and the plea in abatement were properly denied; and the motion for new trial was properly denied.

The judgment of the trial court is affirmed.

AFFIRMED.