UNITED STATES of America

v.

Barry SIMMONS.

Crim. No. 77–355.

United States District Court,
E. D. Pennsylvania.

Jan. 20, 1978.

David W. Marston, U. S. Atty., Alan M. Lieberman, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Stanford Shmukler, James C. Schwartzman, Philadelphia, Pa., for defendant.

MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

■ Defendant, Barry Simmons, was found guilty by a jury of a two count indictment, charging him in each count with obstruction of justice in violation of 18 U.S.C. § 1503.[1] Defendant has filed a motion renewing his motion for judgment of acquittal which he made at the time of trial. In the alternative he has moved for arrest of judgment[2] or for a new trial. Oral argument was had on the motions. For the reasons hereinafter set forth, defendant's motions will be denied.

### I. Motion for Judgment of Acquittal.

■ In his motion for judgment of acquittal, defendant contends that the evidence was insufficient to support a jury verdict of guilty in connection with Counts I and II. The evidence produced at trial, viewed in a light most favorable to the Government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Armocida*, 515 F.2d 29, 46 (3d Cir.), *cert. denied*, 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975), is more than sufficient to support the verdict. We summarize it as follows:

The defendant was a writ server for the Philadelphia Traffic Court. On July 20, 1977, two of his employees, Barney J. Cummins and William Engle, met with F.B.I. Special Agent Cyril Gamber to report their suspicions that illegal activity was taking place in the defendant's office at 4937 Old York Road, Philadelphia, Pennsylvania. The scheme allegedly involved the mailing of priority scofflaw notices to persons who had violated the Pennsylvania Vehicle Code. All the priority scofflaw notices in the mailings involved violations which were more

---

1. 18 U.S.C. § 1503 provides in pertinent part: Whoever . . . corruptly . . . influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

2. A motion for arrest of judgment may only be raised on the grounds that (1) the indictment or information does not charge an offense; or (2) the court was without jurisdiction of the offense charged. Fed.R.Crim.P. 34; 2 Wright, *Federal Practice and Procedure*: Criminal §§ 571–574 (1969). Since the defendant asserts neither of these grounds, the motion for arrest of judgment will be denied.

than two years old and concerning which there had been some administrative decision at the Traffic Court that no further action should be taken. The dates of the violations on the mailed notices were changed to indicate that the violations had taken place within two years of the mailings.

On July 28, 1977, grand jury subpoenas were served on E. W. Turner, Jr. of the Bell Telephone Company compelling him to bring before the grand jury toll call records of the defendant's business and private telephones.[3]

On August 4, 1977, a grand jury subpoena duces tecum was served on the defendant at his office at 4937 Old York Road, Philadelphia, Pennsylvania. It required him to appear before the grand jury on August 12, 1977 and directed him to bring

> any and all records, documents, files, computer printouts, computer tapes, computer programs, account books, ledgers, returned priority scofflaw notices, unmailed priority scofflaw notices, alphabetized computer lists of traffic violators and any other papers, documents and material relating to priority scofflaw notifications.

At the same time, subpoenas were served on several of the defendant's employees directing them to appear before the grand jury on August 12, 1977. The defendant was aware that these employees had been ordered to appear before the grand jury.[4]

It was during the period following the service of these subpoenas that the obstruction of justice occurred. The Government established its case through the testimony of three of the defendant's employees, a tape recording of happenings in the defendant's office subsequent to the service of the subpoenas, and documents retrieved from two trash bags seized at the defendant's office by the F.B.I. pursuant to a warrant.

Barney Cummins was in the defendant's office on August 4, 1977, wearing a body recorder and transmitter supplied to him by the F.B.I. Cummins testified that as soon as the F.B.I. served the subpoenas and left the office, the defendant began questioning his employees about what they had said to the agents. Defendant went on to instruct various employees as to how to testify before the grand jury. The defendant stated to Cummins and Joseph Korup, another deputy writ server employed by the defendant:

> Let's get it down pat. You are street men. You are deputies. You work on the street. You make arrests. What do you have to do with the office? You come in here and you pick up your work. What work? Warrants and commitments. Who do you pick them up from? Me. What do you do with them? You go out on the street and serve them. Do you ever do anything in the office? No. Did you work here when the priorities? You worked for me at that time. What did you do in the office at that time? Nothing. We work on the street. We go out and serve warrants, make collections and the whole bit. Understood? And that's the story. It's going to probably stay that way. We'll go over it that with the attorneys to.

(Recording at 34).

Cummins testified that the defendant's instructions to him were not an accurate reflection of his work. He had been hired to work on the streets serving warrants, but since July 1, 1977, both he and Korup had worked primarily in the office on priorities.

Cummins further testified that the defendant then began directing those in the

---

3. In addition, the toll records of the defendant's brother's phone were subpoenaed.

4. When walking into the room in which many of his employees were being served with subpoenas, the defendant told F.B.I. agents, "I agree to serve this 12 year old kid who just started a few days ago after school, been here a week." He went on to state to his own employees: "Any papers that you are being hand-ed, I appreciate your accepting em, unless you particularly want to discuss em with any of these gentlemen. My suggestion is that you wait until after you've talked to your attorneys. Okay?" (Recording at 21).

Furthermore, one of the defendant's own witnesses, Elizabeth Rainey, testified that the defendant was told at this time that, "They're [the F.B.I.] serving subpoenas."

office to destroy evidence which had been subpoenaed by the grand jury. The defendant pointed to the computer lists of the priority scofflaw notices and asked Cummins "How many flushes does it take to get rid of those books?" Cummins testified that the defendant took papers out of the office safe, tore them up and gave them to Joseph Korup to flush down the toilet. He gave Cummins a pile of torn priority scofflaw notice copies and told him to put them in the trash, which Cummins did. He then handed Cummins a pile of wet traffic notices, stating that they would not fit in the toilet. He instructed Cummins to tear them into small pieces and to throw them away. Cummins put them in the trash without tearing them. Cummins also testified to observing the defendant tearing up priority scofflaw notices and flushing some notices down the toilet.

Joseph Korup, a deputy writ server employed by the defendant, testified and corroborated Barney Cummins' testimony. He testified that the defendant instructed him and Barney Cummins on how to testify before the grand jury, and that the defendant's instructions were inaccurate. In fact, during July 1977, the defendant had told him "I need your help in the office, to hell with the street." Korup testified that as soon as the F.B.I. left the office at 4937 Old York Road on August 4, 1977, the defendant became very agitated. He handed Korup small shredded papers and Korup flushed them in the toilet. The defendant handed Korup a stack of wet papers and said, "Get rid of these, they won't go down."

Darleen Korup, Joseph's wife and an employee of the defendant, also testified for the Government. She had been in the office on August 4, 1977 and told the defendant what she had just told the F.B.I. She stated:

I told him, he asked me when I came, I said, like the fourth week in July. And I said I came in exclusively for L.U.V. [Lock Your (Cor)Vette].

The defendant replied:

Right. And you stick to that. And we'll go over that with the attorneys.

Mrs. Korup testified that she had lied when she told the F.B.I. that she worked exclusively for L.U.V. She testified that the defendant had previously told her that if anyone asked she was to say that she worked for L.U.V. and that she did not work on priorities or on the computer books. In fact, she had worked on priorities and on the computer books. She testified that after lunch on the 4th, she noticed shredded paper in the hall, in the bathroom and the toilet which had not been there before lunch; that Barney Cummins, Joseph Korup and the defendant were running around the office and that the defendant made a couple trips to the bathroom with papers in his hands. She further testified that the defendant told Dawn Specht, a twelve-year-old who worked part-time in his office, to tell the grand jury that she had not been in the office when the priorities were being worked on. Darleen Korup stated that this instruction was inaccurate, inasmuch as Dawn did stuff priority scofflaw notices into envelopes.

Finally, the Government introduced the material which they had seized from the defendant's office on August 4, 1977, pursuant to a search warrant. This material consisted of the contents of two garbage bags and twenty-nine computer printout books. Within the garbage bags were torn paper which the F.B.I. had repieced and identified as six priority scofflaw notification letters; packets of traffic violation warrants; and other torn priority scofflaw notices.[5]

The Government's case was strong, and there can be no doubt that the evidence was sufficient to support the jury's verdict as to each of the two counts of the indictment which charged him in each count with obstruction of justice in violation of 18 U.S.C. § 1503.

---

5. Barney Cummins identified some of these notices (G-5a-g) as the notices which the defendant had handed to him and asked him to destroy.

Defendant also argues that an essential element of the offense was missing in that "there was no evidence that a federal Grand Jury had an on-going investigation of the defendant or his activities as charged in the indictment . . . ." In fact, there was more than sufficient evidence to establish the pendency of a judicial proceeding within the meaning of the statute. A federal grand jury was duly empaneled on June 18, 1976 by the Honorable Daniel H. Huyett III of this Court. On July 28, 1977, the grand jury issued subpoenas to Mr. E. W. Turner, Jr. of Bell Telephone of Pennsylvania to produce toll call records charged to the defendant's phones before the grand jury on August 5, 1977. On August 4, 1977, it issued subpoenas to compel Joseph Korup, Darleen Korup, Dawn Specht and the defendant to testify on August 12, and for the defendant to bring with him certain documents. Each of these subpoenas was issued on application of Alan M. Lieberman, Assistant United States Attorney. Defendant contends that since the subpoenas were issued by an Assistant United States Attorney rather than by the grand jury and that the grand jury had not yet heard any testimony concerning this investigation, therefore, no grand jury investigation was pending. This contention has been rejected by the Third Circuit in *United States v. Walasek*, 527 F.2d 676 (3d Cir. 1975), a case in which the defendant was convicted of obstructing justice in violation of 18 U.S.C. § 1503 for causing certain corporate records to be destroyed after he had been advised that a federal grand jury subpoena duces tecum had been served upon the company. The defendant argued that he could not be guilty of the offense because there was no judicial proceeding pending which could be equated to an "administration of justice." In that case, the United States Attorney's office had assigned the investigation to a regularly sitting grand jury. A witness was called to testify before the grand jury, and upon the witness's refusal to testify, a petition for immunity had been filed and granted. *Id.* at 678. However, at the time of the alleged obstruction, the grand jury had not heard any testimony nor had it been directly involved in the decision to issue the subpoena. The court stated:

> Appellant would have us adopt a rigid rule that a grand jury proceeding is not "pending" until a grand jury has actually heard testimony or has in some way taken a role in the decision to issue the subpoena. He offers no authority for such a rule, and we are not inclined to adopt it. Appellant is correct in his observation that a grand jury subpoena may become an instrumentality of an investigative agency, without meaningful judicial supervision. Nevertheless, the remedy against potential abuses is not to establish a rule, easily circumvented, by which some formal act of the grand jury will be required to establish "pendency."

*Id.* (footnote omitted). In the instant case, there can be no doubt that a grand jury investigation was pending.

## II. *Motion for a New Trial.*

Defendant claims the following errors in support of his motion for a new trial:

(A) That the Court erred in refusing pretrial motions to suppress evidence;

(B) That the Court erred in limiting cross-examination of key government witness Barney Cummins;

(C) That the Court erred in refusing to allow the defense to present certain evidence offered to discredit Barney Cummins;

(D) That the Court erred in allowing the prosecution to present testimony, through F.B.I. Agent Cyril Gamber, Saul Schach, John Beck, and Barney Cummins, relating to an alleged "scheme or plot" dealing with priority scofflaw notices which it was implied was illegal and intended to divert funds from the City of Philadelphia and to obtain money from citizens under false pretenses, all of which was prejudicial and limited to crimes not charged in the indictment and irrelevant to the charges.

(E) That the Court erred in sustaining objections to questions of defense witnesses tending to elicit from them their interpretation of the language allegedly used by the

defendant which was the subject of the indictment, even though the prosecution witnesses were permitted to give such interpretations;

(F) That the Court erred in its charge to the jury in response to a jury inquiry as to the necessary elements under Count II of the indictment, dealing specifically with the question of whether Count II required an endeavor to influence, obstruct and impede the due administration of justice by restricting all three named persons to withhold information from the grand jury.

### A. *Suppression of Evidence*

Prior to trial, the defendant petitioned the Court to suppress evidence seized from his office at 4937 Old York Road, Philadelphia, Pennsylvania, pursuant to a search warrant. The Court denied defendant's motion. For the reasons hereinafter set forth, we affirm our earlier ruling.

On August 4, 1977, United States Magistrate Richard A. Powers III issued a warrant to search the first story of the building located at 4937 Old York Road, Philadelphia, Pennsylvania for:

> alphabetized computer printouts of traffic violators being compilations of Philadelphia Traffic Court category books; returned Priority Scofflaw Notifications: unmailed Priority Scofflaw Notifications; bank checks and money orders forwarded to above-described premises by traffic violators; computer tapes containing traffic violator information; account books containing traffic violator information.

The search warrant was based on a three-page single-spaced affidavit. Defendant contends that the affidavit on its face does not support a finding of probable cause; that the warrant was overly broad; and that it was improperly executed. The Court finds no substance to any of these arguments. Defendant's primary concern is that the affidavit is laden with probable cause information attributed to Barney

Cummins, William Engle and Joseph Korup, individuals which the affidavit points out worked under the supervision of the defendant at his office at 4937 Old York Road, Philadelphia, Pennsylvania. It contains their allegations as to what the defendant told them and what they observed concerning the scheme. The affidavit sets forth in detail the attempts of the defendant to obstruct the grand jury's investigation, and, in particular, his attempt to destroy subpoenaed evidence. The thrust of the defendant's argument is that the affidavit does not contain any allegation concerning the credibility and reliability of these individuals. *See Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

An informant's detailed eyewitness report of a crime may be self-corroborating; it supplies its own indicia of reliability. *United States v. Hellman,* 556 F.2d 442, 445 (9th Cir. 1977); *United States v. Banks,* 539 F.2d 14, 17 (9th Cir. 1976); *United States v. Mahler,* 442 F.2d 1172, 1174–75 (9th Cir.), *cert. denied,* 404 U.S. 993, 92 S.Ct. 541, 30 L.Ed.2d 545 (1971). As the affidavit in the instant case clearly points out, Barney Cummins and Joseph Korup were employees of the defendant, were on the premises at 4937 Old York Road on August 4, 1977, and were eye-witnesses to the alleged destruction of evidence. Their detailed statements and those of William Engle, also identified as an employee of the defendant, corroborate each other. It seems almost ridiculous to contend that their statements require a further showing of reliability or credibility. *See United States v. Swihart,* 554 F.2d 264, 268–69 (6th Cir. 1977); *United States v. Sellaro,* 514 F.2d 114, 124 (8th Cir. 1973), *cert. denied,* 421 U.S. 1013, 95 S.Ct. 2419, 44 L.Ed.2d 681 (1975). We find that the affidavit on its face satisfied the *Aguilar-Spinelli* requirements for a finding of probable cause.[6]

---

6. There has been a recent trend to limit the *Aguilar-Spinelli* test to unidentified professional informers, and to lessen the required showing of past reliability for the non-professional, identified informant. *See United States v. Darensbourg,* 520 F.2d 985, 988–89 (5th Cir.), *modified,* 524 F.2d 233 (5 Cir. 1975); *United States v. Burke,* 517 F.2d 377, 380–81 (2d Cir. 1975).

■ Moreover, even if the affidavit were insufficient, and hence the warrant invalid, the agents had sufficient basis to search the premises on August 4, 1977 without a warrant under the doctrine of exigent circumstances. Apart from the information set forth in the affidavit, the agents observed Barney Cummins and Joseph Korup inside the premises at 4937 Old York Road on August 4, 1977. The agents received information from both Cummins and Korup that documents were being destroyed inside the premises. Moreover, Agent Gamber testified that on August 4, 1977 he was informed by Agent Lovelace, who was monitoring the transmission from the body transmitter worn by Barney Cummins, that the transmissions indicated that documents were being destroyed within the premises. Finally, Agent Ryman testified that while listening to the tape recording taken from Cummins' recorder on August 4, he heard the defendant telling Cummins that certain documents should be destroyed. In this situation, the agents would have been justified in seizing the property without a warrant under the doctrine of exigent circumstances. *United States v. Montiell*, 526 F.2d 1008, 1010 (2d Cir. 1975); *United States v. Rubin*, 474 F.2d 262, 268 (3d Cir. 1973); *cf. Chapman v. United States*, 365 U.S. 610, 615, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961); *United States v. Jeffers*, 342 U.S. 48, 52, 72 S.Ct. 93, 96 L.Ed. 59 (1951); *Johnson v. United States*, 333 U.S. 10, 14–15, 68 S.Ct. 367, 92 L.Ed. 436 (1948).[7] The fact that the agents decided to wait until a search warrant was issued before making the seizure does not preclude a court from finding that the search was justified by exigent circumstances. *United States v. Allen*, 566 F.2d 1193 (3d Cir. 1977); *United States v. Helberg*, 565 F.2d 993 (8th Cir. 1977).

### B. Cross-Examination of Barney Cummins

Defendant contends that at the trial he attempted to cross-examine the key Government witness, Barney Cummins, as to numerous prior misdeeds, misstatements and incidents which showed his propensity toward taking revenge on those he disliked, as well as a motive for doing such in the present case, and that this cross-examination was severely curtailed. Defendant's allegation that the Court severely curtailed his cross-examination of Barney Cummins is totally unsupported by our recollection of the record.[8] During a cross-examination which lasted over six hours and occupied parts of two court days, we permitted defendant wide latitude in examining Cummins including incidents tending to establish his personal bias against the defendant. Moreover, we permitted the defendant to examine him on all proffered specific incidents of alleged misconduct.

### C. Refusal to Allow Extrinsic Evidence to Discredit Barney Cummins

■ Defendant sought to introduce extrinsic evidence of specific acts of Barney Cummins. The Court allowed the defendant to produce all proffered extrinsic evidence of Cummins' alleged personal bias toward the defendant. *United States v. Brown*, 547 F.2d 438, 445–46 (8th Cir.), *cert. denied*, 430 U.S. 937, 97 S.Ct. 1566, 51 L.Ed.2d 784 (1977); *United States v. Harvey*, 547 F.2d 720, 722 (2d Cir. 1976); *United States v. Moore*, 174 U.S.App.D.C. 113, 115, 529 F.2d 355, 357 (1976); Advisory Committee Note to Fed.R.Evid. 608(a); McCormick, *Evidence* § 40 at 81 (2d ed. 1972). Pursuant to our interpretation of Fed.R.Evid. 608(b), the Court did limit the

It is unnecessary to reach this issue in the instant case since the affidavit satisfies the *Aguilar-Spinelli* test.

7. The appropriate standard to determine whether a warrantless search is justified by emergency circumstances was set forth by the court in *United States v. Rubin*, 474 F.2d 262, 268 (3d Cir. 1973): "When Government agents, however, have probable cause to believe con-

traband is present and, in addition, based on the surrounding circumstances or the information at hand, they reasonably conclude that the evidence will be destroyed or removed before they can secure a search warrant, a warrantless search is justified."

8. Neither party ordered transcripts.

defendant in his attempt to produce extrinsic evidence of specific acts of past conduct of the witness Barney Cummins offered for the purpose of attacking his credibility. Fed.R.Evid. 608(b) provides in pertinent part:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence.
>
> . . .

The testimony which we excluded had nothing to do with Barney Cummins' relationship with the defendant, nor did it concern convictions of any crime. Much of it concerned incidents occurring when Cummins was employed as a police officer for Lower Moreland, Pennsylvania. As heretofore noted, the defendant was given a full opportunity to examine Cummins about each of these incidents. According to the defendant's offers of proof, the witnesses proffered by him, and excluded by the Court, would have contradicted Cummins' denials and/or explanations of the incidents. This testimony is precisely the type that Rule 608(b) excludes to avoid minitrials on wholly collateral matters which tend to distract and confuse the jury. This was not evidence concerning the witness's bias against the defendant, but instead went to totally collateral issues. The Court, therefore, properly excluded this evidence. *United States v. Turquitt*, 557 F.2d 464, 471 (5th Cir. 1977); *United States v. Cluck*, 544 F.2d 195, 196 (5th Cir. 1976); *United States v. Harris*, 542 F.2d 1283, 1302 (7th Cir. 1976); *United States v. Estell*, 539 F.2d 697, 700 (10th Cir. 1976); *United States v. Blackshire*, 538 F.2d 569, 572 (4th Cir.), *cert. denied*, 429 U.S. 840, 97 S.Ct. 113, 50 L.Ed.2d 108 (1976); *United States v. Cox*, 536 F.2d 65, 70 (5th Cir. 1976); *United States v. Banks*, 520 F.2d 627, 631 (7th Cir. 1975); *cf. United States v. Wigoda*, 521 F.2d 1221, 1227 (7th Cir. 1975), *cert. denied*, 424 U.S. 949, 96 S.Ct. 1421, 47 L.Ed.2d 355 (1976). Further, it should be pointed out that the Court reminded defense counsel at sidebar that the Court's ruling did not preclude him from introducing opinion and reputation evidence as to Barney Cummins' character for untruthfulness, pursuant to Fed.R.Evid. 608(a). The defendant did not offer any such testimony.

### D. *Evidence of Underlying "Scheme"*

[8] Defendant next contends that the Court erred in allowing the prosecution to present testimony relating to an "alleged 'scheme or plot' dealing with priority scofflaw notices which it was implied was illegal and intended to divert funds from the city of Philadelphia . . . ." The Court did allow the Government to introduce testimony of the underlying grand jury investigation for the purpose of establishing the defendant's motive for the obstruction of justice charged in the instant indictment. As the court stated in *United States v. Bradwell*, 388 F.2d 619, 620–21 (2d Cir.), *cert. denied*, 393 U.S. 867, 89 S.Ct. 152, 21 L.Ed.2d 135 (1968):

> In order to show that a defendant has intimidated a witness in a grand jury investigation, it is appropriate for the Government to establish a motive by connecting him with the objects of the investigation. . . . Moreover, in order that the jury may assess the intensity of his motive, it should know the nature of the offense under investigation and the extent of the defendant's involvement; limiting the Government to a mysterious statement that the defendant was somehow connected with an investigation into some unidentified crime would unduly hamper its presentation.

*See United States v. Mitchell*, 514 F.2d 758, 762 (6th Cir. 1975); *United States v. Brown*, 456 F.2d 569, 571 n. 4 (3d Cir.), *cert. denied*, 408 U.S. 923, 92 S.Ct. 2492, 33 L.Ed.2d 334 (1972). However, to prevent the possibility that the jury might use this evidence for an impermissible purpose, we instructed them:

> there was some evidence introduced over the course of this trial concerning an alleged scheme in connection with priority scofflaw notices by allegations that dates were changed in the letters that were mailed to the violators. I instruct you that such evidence was submitted

solely for the purpose of showing the nature of the offense that was being investigated by the grand jury, and the extent of the defendant's involvement, if any, to show what motive, if any, the defendant would have for doing the alleged acts alleged by the Government in this indictment. I must further instruct you that the only crime or crimes that you are to consider in this case is whether the defendant, as charged in the indictment, did "intentionally, knowingly and corruptly endeavor to influence, obstruct and impede the due administration of justice."

And I want to say to you again that you are not to consider whether the defendant is guilty or innocent of any crimes other than the crimes alleged in this indictment. The defendant is not charged with and is not indicted for any crime or crimes in connection with any scheme or plan or the changing of dates. As I said, that was admitted for the sole purpose of showing what the grand jury was investigating and whether or not this defendant had a motive.

While we have not discussed all the contentions which were raised by defendant, we have reviewed the record and considered all the grounds alleged by the defendant and we hold that none of them, singly or collectively, has sufficient substance to merit any further discussion as a basis for granting a judgment of acquittal or a new trial in this case.

Accordingly, an Order will be entered denying the defendant's motions for judgment of acquittal, arrest of judgment and new trial.