STATE OF NEBRASKA, APPELLEE, V. DOUGLAS
R. PAYNE, APPELLANT.

271 N. W. 2d 350

Filed November 8, 1978. No. 41972.

Thomas M. Kenney, Douglas County Public Defender, and Stanley A. Krieger, for appellant.

Paul L. Douglas, Attorney General, and J. Kirk Brown, for appellee.

Heard before SPENCER, C. J., Pro Tem., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ., and KUNS, Retired District Judge.

McCOWN, J.

After trial to the court, the defendant was convicted on two counts of possession of a controlled substance with intent to deliver. The defendant was sentenced to imprisonment for not less than 2½ nor more than 4 years on each count, the sentences to run concurrently. The defendant has appealed.

The only issue on this appeal is whether the District Court erred in overruling defendant's motion to suppress evidence seized under a search warrant obtained on the affidavit of a police officer.

It is the defendant's contention that the affidavit for the search warrant failed to allege any underlying circumstances from which the officer making the affidavit concluded that the informant was credible or reliable. It is defendant's position that there was nothing in the affidavit to indicate the reliability of the informant or where he obtained his information.

The affidavit sought a search warrant for narcotic drugs, including amphetamines and barbiturates reasonably believed to be located in apartment No.

221, Tudor Heights Apartments, 10638 Birch Street, Omaha, Douglas County, Nebraska. The stated grounds for the issuance of the search warrant, and the reasons for the officer's belief that the drugs were concealed or kept at that location were: "Officer O'Connor, Frank received information that Douglas R. Payne W/M DOB 12-25-55 of 10638 Birch St., Apt. # 221 is in possession of a large amount of capsules known by the street name as crystals, these are presently being sold from this apt. by Payne. Checking the record of Douglas R. Payne it was found that he has several criminal entries also a conviction for the delivery of a controlled substance which he received one years probation for this offense on 2-19-76.

"During the last 72 hours Officer O'Connor contacted an informant who made a controlled buy from Douglas R. Payne at 10638 Birch St. Apt. # 221. This informant advised Officer O'Connor that Payne had in his possession at this time several hundred capsules of crystal, also that Payne was interested in getting rid of the capsules in large quantity's (sic). From the above information Officer O'Connor believes that concealed inside Apt. # 221 at 10638 Birch St. under the control of Douglas R. Payne are (sic) a large quantity of illegal possessed narcotic drugs for street sale."

The affidavit was the only information presented to the judge at the time the search warrant was requested. The judge of the District Court issued the search warrant based on the affidavit. The police executed the warrant the same day, and found a quantity of controlled substances. This prosecution was then commenced. Defendant's motion to suppress the evidence seized was overruled, and this appeal followed conviction.

Essentially, the defendant contends that an affidavit must affirmatively show that the informant has previously been found reliable, and that the ab-

sence of such a statement is a fatal defect which invalidates a search warrant based upon the affidavit. Such a rule would invalidate any warrant based on information from a first-time informant.

It has been well established that affidavits for search warrants such as the one involved here must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. Recital of some of the underlying circumstances in the affidavit is essential. Where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the court should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. United States v. Ventresca, 380 U. S. 102, 85 S. Ct. 741, 13 L. Ed. 2d 684.

Aguilar v. Texas, 378 U. S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723, set out the rules applicable here. In that case the Supreme Court said: "Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, (cit.) the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, (cit.) was 'credible' or his information 'reliable.' "

The critical sentence in the affidavit involved in the case before us states: "During the last 72 hours

Officer O'Connor contacted an informant who made a controlled buy from Douglas R. Payne at 10638 Birch St. Apt. # 221." That sentence states that the contact with the informant was made by the officer affiant. Obviously the police had had some prior contact with the informant, which led the officer to seek the cooperation of the informant in attempting to make a controlled buy from the defendant at the location referred to. It would be absurd to presume that such prior contacts had established that the informant was unreliable, rather than reliable.

The affidavit does not spell out the meaning of the words "controlled buy." The testimony at the suppression hearing established that the term "controlled buy" in law enforcement parlance meant a purchase of controlled substances by a cooperating individual from a specific designated person or at a specific designated place, made under the personal supervision and control of an officer or officers. At the suppression hearing Officer O'Connor detailed the actions he took personally in this case, but conceded that the extent of control, supervision, and observation would vary from officer to officer and from case to case, dependent upon the circumstances. He did not present any evidence at the time of issuance of the warrant except that given in the affidavit. The affidavit, reasonably interpreted, indicates that the information given by the informant to Officer O'Connor immediately after the "controlled buy" resulted from the personal observation of the informant while he was on the defendant's premises. There is no evidence that the judge who issued the search warrant and Officer O'Connor attributed the same meaning to the term "controlled buy," but it can be reasonably inferred that the judge was familiar with local law enforcement terms and usage.

Although the affidavit in this case fails to establish that the informant was an untested citizen inform-

ant, neither does it establish that the informant was not a citizen informant. An informant's detailed eyewitness report of a crime may be self-corroborating; it supplies its own indicia of reliability; and an untested citizen informant who has personally observed the commission of a crime is presumptively reliable. See, United States v. Simmons, 444 F. Supp. 500 (E. D. Pa., 1978); People v. Schulle, 51 Cal. App. 3d 809, 124 Cal. Rptr. 585; State v. Drake, 224 N. W. 2d 476 (Iowa, 1974). It has been held, however, that the status of a citizen informant cannot attach unless the affidavit affirmatively sets forth the circumstances from which the existence of the status can reasonably be inferred. See People v. Smith, 17 Cal. 3d 845, 132 Cal. Rptr. 397, 553 P. 2d 557. The affidavit here does not affirmatively set forth the circumstances from which the existence of a citizen informant status can reasonably be inferred.

This court has consistently held that affidavits for search warrants must be tested in a commonsense realistic fashion. See State v. Huggins, 186 Neb. 704, 185 N. W. 2d 849. A commonsense realistic interpretation of the affidavit involved here establishes that a police officer contacted an informant and obtained the informant's cooperation for the purpose of purchasing, or attempting to purchase, controlled substances from an individual at a specified location. The informant so selected, under the personal supervision and control of the officer, made a purchase of controlled substances from the defendant, delivered the substances to the officer, and informed the officer of what he had seen and heard at the time of the purchase. Those underlying circumstances were sufficient to establish that the informant was presumptively reliable, and that his information was credible in the absence of evidence to the contrary. In this case the defendant does not contend that any of the circumstances or information detailed in the affidavit was incorrect or inaccurate, but contends

only that the affidavit failed to affirmatively show the prior reliability of the informant.

The words "who has proven reliable in the past" do not constitute a magic formula, the recitation of which establishes the reliability of an informant. Neither does the absence of the words in an affidavit establish the fact that the informant was not reliable, nor render the search warrant fatally defective. Although the affidavit in this case may be marginal, and it may not be easy to determine that the affidavit demonstrates the existence of probable cause, nevertheless the trial court found probable cause for the issuance of the search warrant on the basis of the affidavit here. Constitutional policy demands that doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. See United States v. Ventresca, 380 U. S. 102, 85 S. Ct. 741, 13 L. Ed. 2d 684.

The judgment of the District Court was correct and is affirmed.

AFFIRMED.

WHITE, J., dissenting.

I respectfully dissent. In Aguilar v. Texas, 378 U. S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723, the United States Supreme Court established what has come to be known as the "two-pronged" test for judging the sufficiency of an affidavit for a search warrant. In order to pass that test, the affidavit must inform the magistrate of: (1) Some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and (2) some of the underlying circumstances from which the officer concluded (a) that the informant, whose identity need not be disclosed, was credible, or (b) that his information was reliable. I feel that the affidavit before us entirely fails to satisfy the second prong.

In determining whether the magistrate was justified in the issuance of a warrant, the State is not per-

mitted to supplement information contained in the affidavit or given the magistrate for a search warrant at the hearing on the motion to suppress. See Whiteley v. Warden, 401 U. S. 560, 91 S. Ct. 1031, 28 L. Ed. 2d 306.

Since the affidavit and the evidence at the hearing on the motion to suppress are devoid of any evidence that the informant was a "citizen informant," the majority opinion cannot and does not contend that his report of a crime would be presumptively reliable. Nor does the majority opinion contend that there is any indicia of previous reliability of the informant contained in the affidavit or presented to the magistrate. The second prong of the Aguilar test must then be met by the officer's affidavit of a "controlled buy."

It is conceded that an affidavit setting forth the underlying circumstances of a sufficiently controlled buy would justify a decision of the magistrate that the information provided by the informant in a particular case is "reliable" and thus obviate the necessity of an inquiry into the credibility of the informant in general. The vice in the majority opinion, it seems to me, is its interpretation of the words "controlled buy." As recited in the majority opinion, the police officer was permitted to testify at the suppression hearing that the words meant the purchase of a controlled substance by a cooperating individual from a specific designated person or a specific designated place made under the personal supervision and control of an officer or officers. Despite the officer's concession that the amount of "control" possible will depend on the circumstances, the majority opinion finds the term "controlled buy" to be capable of precise definition, reads that definition into the affidavit, and finds the affidavit sufficient. Again, it must be pointed out, the definition of "controlled buy" was not present in the affidavit nor presented to the magistrate.

In the affidavit for the search warrant in Jones v. United States, 336 A. 2d 535, a decision of the District of Columbia Court of Appeals, the first paragraph of the affidavit stated that the officer had "met with a reliable informant, this informant has proven reliable in at least 5 occasions in the past two months, all of which resulted in the arrest of narcotic violators and the seizure of narcotic drugs. This source stated that illicit narcotic drugs were being dispensed inside 1111 Mass. Ave. N. W. #308. This source of information further stated that it had illegally purchased illicit narcotic drugs in the past and that it was willing to purchase illicit narcotic drugs for the Third District Vice Unit." The affidavit went on to describe an oft-repeated scenario. The court there stated that: "A controlled purchase of drugs from the apartment was arranged. The officer and the informant went to the apartment building. The informant was searched by the officer and found to have no money or narcotics on his person. The officer then gave the informant police funds, and watched him enter the building. On the informant's return a few minutes later, as described in the affidavit, the 'affiant then searched the source of information and found it (the informant) to contain a quantity of brown envelopes all of which contained green plant material. The search also revealed the source of information to be free of any money.'

"The informant further told the officer that he had purchased the material from a particular person in that particular apartment, and a preliminary field test undertaken promptly reflected that the substance purchased was marijuana."

The court concluded that the observation of the informant by the police officer, which extended only to the door of the apartment complex and not to the door of the specific apartment, was sufficient based on previous criteria of reliability and that no direct

observation of the apartment door itself would be required. The differences between the two cases are obvious. In this case we have no previous indicia of credibility of the informant. There is no indication in the affidavit that the substance purchased actually turned out to be a controlled substance. More importantly, the decision in Jones as to whether the buy was "controlled enough" was made by the magistrate after consideration of underlying circumstances, while in the instant case, the magistrate merely accepted the conclusion of the officer on that issue. As Mr. Justice Jackson noted in Johnson v. United States, 333 U. S. 10, 68 S. Ct. 367, 92 L. Ed. 436: "The point of the Fourth Amendment, which is not often grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from the evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." This protection function of the warrant requirement affords protection in name only when the magistrate fails to inquire into the "underlying circumstances" as required by Aguilar and accepts instead the conclusions of the officer.

It appears from the record of the suppression hearing that the only evidence before the magistrate was the affidavit and that the amount of "control" in a controlled buy could vary depending on the circumstances. I have no hesitancy in saying that if testimony of the officer at the hearing on the motion to suppress had been contained in the affidavit, the evidence would be admissible. However, it is my understanding of the law that since the evidence was not before the magistrate, and the words "controlled buy" are not so precise that any particular meaning can be attributed to them, that we do violence to Whiteley v. Warden, *supra*, by approving this affi-

davit. The evidence is probably conclusive that the defendant was a large dealer in dangerous drugs and that suppression of the evidence would result in his freedom. As it was put by Mr. Justice (then judge) Cardozo: "The criminal is to go free because the constable has blundered." People v. Defore, 242 N. Y. 13, 150 N. E. 585. I am as reluctant as the majority to bring about this result, but as Mr. Justice Clark responded in Mapp v. Ohio, 367 U. S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081: "* * * 'there is another consideration — the imperative of judicial integrity.' * * * The criminal goes free, * * * but it is the law that sets him free. Nothing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence."

I would reverse.

KUNS, Retired District Judge, joins in this dissent.