STATE OF NEBRASKA, APPELLEE, V. MARCIA C. ARNOLD, APPELLANT.

336 N.W.2d 97

Filed July 1, 1983. No. 82-557.

Steven Lefler of Schrempp & Lefler, for appellant.

Paul L. Douglas, Attorney General, and Dale D. Brodkey, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

McCOWN, J.

After trial to the court without a jury the defendant was found guilty of possession of a controlled substance and sentenced to 2 years' probation, with 30 days to be served in jail as a condition of probation. The defendant has appealed.

The sole assignment of error on appeal is that the District Court erred in denying the defendant's motion to suppress evidence obtained from the execution of a search warrant. The contention is that the affidavit for the search warrant was insufficient.

On January 26, 1982, an affidavit and application for the issuance of the search warrant involved here were filed in the Omaha Municipal Court. The affidavit was executed by Police Officer Nepodal. The affidavit stated that a group of concerned citizens had first contacted police about narcotics activities in the area of 34th and Decatur Streets in Omaha in March of 1981. The concerned citizens gave the police the addresses of two residences from which they believed narcotics were being sold.

An independent police investigation indicated that one of the addresses, 1722 North 34th Street, was rented to a Robert L. Ross, and the utilities at that address were registered in the same name. A ser-

geant in the narcotics unit had received a call in January of 1982 from an unidentified informant who stated that a person named Ross was selling marijuana in the 34th and Decatur Streets area.

In January 1982 Nepodal arranged with an individual identified as informant No. 1 to make a controlled buy of marijuana at 1722 North 34th Street. Nepodal watched the informant enter the residence at 1722 North 34th Street, and the informant returned in a short time with marijuana. The informant told Nepodal that when he went into the residence he talked to a young black man about purchasing marijuana. That individual sold the marijuana to the informant and informed him that he only kept small amounts of marijuana at that residence and that if the informant wanted to purchase additional quantities, the informant would have to contact "Cisco," and gave the informant a telephone number. A police check established that the telephone number given to the informant was listed to Sheryl Ross at 1722 North 34th Street.

The informant also advised Nepodal that a man known as "Cisco" was dealing in marijuana. An independent investigation by the police established that a man known as "Cisco Kid" resided at 1722 North 34th Street.

Sometime later the informant spoke with Cisco about the purchase of a larger quantity of marijuana and was told that Cisco would have to have the money and would have to leave the residence at 1722 North 34th Street and go elsewhere to get the larger quantity of marijuana. Nepodal then arranged for another controlled buy of marijuana at 1722 North 34th Street, to be made under the surveillance of the police. The informant entered the residence, and after a short time police observed a black, heavy-set male leave the residence and drive off in a car registered to Sheryl Ross. Police officers followed the car to a house located at 6915 North 24th Street, where they watched the man they had been follow-

ing enter the residence. After a short time the man left the residence and drove back to 1722 North 34th Street.

A short time after Cisco returned, the informant came out of the house and turned a quantity of marijuana over to Nepodal. The informant also told Nepodal that Cisco had had to leave the house to get the marijuana and that when Cisco returned he took the marijuana out of his coat pocket and gave it to the informant. A check of police department photographs and records indicated that Cisco was Robert Ross and that Ross was the man that police had followed to 6915 North 24th Street.

The affidavit also related that a computer check showed that the defendant in this case, Marcia C. Arnold, resided at 6915 North 24th Street, and Nepodal also stated that he had received information in the past that the defendant was involved in the distribution of controlled substances.

In the 48 hours prior to the filing of the affidavit, the informant was again in contact with Robert Ross, who told the informant that marijuana was ready and the "lady" had the marijuana in her possession. The informant stated that Ross was ready to go and pick up the marijuana so that he could make a delivery. The affidavit concluded with a statement that, based on the foregoing facts, Nepodal had reason to believe that there was a quantity of marijuana concealed at 6915 North 24th Street under the control of the defendant, Marcia C. Arnold.

The application requested a warrant to search 6915 North 24th Street, 1722 North 34th Street, and the vehicles used by Ross for marijuana, and records, money, or other items used in the distribution of controlled substances. The search warrant was issued by the municipal court on January 26, 1982.

Upon issuance of the warrant, police officers placed the house at 6915 North 24th Street under surveillance. They observed Ross drive up, enter

the residence, and leave after approximately 10 minutes. After Ross left, the police served the warrant and searched the residence. They found a purse in the bedroom containing 82 tablets of a substance later determined to be LSD. The police also found $30 that was identified as part of the purchase money from the earlier controlled buys made at 1722 North 34th Street. The defendant, Marcia C. Arnold, was arrested and charged with possession of LSD.

Upon later questioning, the defendant admitted that the LSD belonged to her and that Robert Ross had given her $800 to purchase two pounds of marijuana.

The defendant filed a motion to suppress the evidence flowing from the execution of the search warrant. The motion was denied by the trial court. Trial to the court and sentencing followed. The sole issue on this appeal is whether the information in the affidavit for a search warrant was sufficient.

The rule is well established that in evaluating the showing of probable cause necessary to support a search warrant, only the probability, and not a prima facie showing, of criminal activity is the standard for determining probable cause. *State v. Robish, ante* p. 190, 332 N.W.2d 922 (1983).

Affidavits for search warrants must be tested in a commonsense, realistic fashion. Where some of the underlying circumstances are detailed in the affidavit, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the court should not invalidate the warrant by interpreting the affidavit in a hypertechnical rather than a commonsense manner.

An informant selected by the police, who makes a purchase of controlled substances under the personal direction, supervision, and control of a police officer, and informs the officer of what the informant saw and heard at the time of the purchase, is presumptively reliable. *State v. Payne,* 201 Neb. 665, 271 N.W.2d 350 (1978).

The affidavit in the present case was adequate to support the issuance of a search warrant under the former standards of *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969). Its sufficiency is even more obvious under the totality of the circumstances test established by *Illinois v. Gates*, 51 U.S.L.W. 4709, decided June 8, 1983.

*Gates* holds that the elements under the two-pronged test concerning the informant's veracity, reliability, and basis of knowledge should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is probable cause to believe that contraband or evidence is located in a particular place. The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

The facts set out in the affidavit in the present case were more than sufficient to ensure that the magistrate had a substantial basis for concluding that probable cause existed to believe that contraband or evidence was located at 6915 North 24th Street in Omaha, Nebraska. The denial of the motion to suppress was correct and the judgment of the District Court is affirmed.

AFFIRMED.

WHITE, J., concurring.

I agree that the affidavit met the test of *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969). Having met that

test, any discussion of *Illinois v. Gates*, 51 U.S.L.W. 4709, decided June 8, 1983, is unnecessary.

*Gates* and, more recently, *United States v. Villamonte-Marquez*, 51 U.S.L.W. 4812, decided June 17, 1983, present the disturbing vision that the bedrock of our federal constitutional rights may only be a mass of shifting sand.

In my view, it is now past time to consider search and seizure cases in light of Neb. Const. art. I, § 7: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

" ' "These ([Fourth Amendment rights]), I protest, are not mere second-class rights but belong in the catalog of indispensable freedoms. Among deprivations of rights, none is so effective in cowing a population, crushing the spirit of the individual and putting terror in every heart. Uncontrolled search and seizure is one of the first and most effective weapons in the arsenal of every arbitrary government." *Brinegar v. United States*, 338 U.S. 160, 180 [(1949)] (Jackson, J., dissenting).' *Almeida-Sanchez*, 413 U.S., at 273-274." 51 U.S.L.W. at 4820 (Brennan, J., dissenting).

It, indeed, may be and perhaps is the perception of a majority of the U.S. Supreme Court that the necessities of law enforcement require a more flexible view of the fourth amendment. The result may be a more orderly society. We shall also be a less free society.

In my judgment, as Sir Thomas More is reputed to have told Roper, we have one less tree to shield us from the devil. I propose that rather than blindly allowing the " 'continuing evisceration of Fourth Amendment protection against unreasonable searches and seizures,' " *id.*, we adopt a standard based on

the Nebraska Constitution and offer such protection as we may in the courts of Nebraska.

SHANAHAN, J., joins in this concurrence.