STATE OF NEBRASKA, APPELLEE, V. RICHARD R. DUFF, JR., APPELLANT.

412 N.W.2d 843

Filed September 25, 1987.   No. 86-880.

Donald W. Kleine of Kleine Law Office, for appellant.

Robert M. Spire, Attorney General, and Laura L. Freppel, for appellee.

BOSLAUGH, C.J., Pro Tem., WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

BOSLAUGH, C.J., Pro Tem.

After a trial to the court, the defendant, Richard R. Duff, Jr., was convicted of second degree murder and use of a firearm in the commission of a felony. He was sentenced to imprisonment for 12 years on the murder count and 3 to 5 years for use of a weapon, the sentences to run consecutively. The defendant has appealed and contends that his motion to suppress evidence seized in a search pursuant to warrant should have been sustained and that the evidence is not sufficient to support the finding of guilty.

The record shows that on February 8, 1985, the defendant, his girlfriend, Beverly Hill, and a male friend, Robert Winston, proceeded to the Bali-Hi Lounge at 24th and Hamilton Streets in Omaha, Nebraska. They found seats at the bar and began drinking alcoholic beverages. After approximately 10 or 15 minutes, the defendant walked over to the entrance of the lounge, where he came into contact with the victim, Edward Hughes. The defendant and the victim then engaged in conversation.

The defendant testified that the conversation involved drugs and that the victim was attempting to locate a "set," known as

Ritalin and Talwin. The defendant and the victim walked outside the lounge so that the proprietor of the Bali-Hi would not hear the conversation. Once outside, the defendant claims that he was struck by the victim, Hughes, and two other men known to the defendant as Red and Truman. According to Duff, Red displayed a pistol. When Duff saw the pistol, he drew his own pistol. Duff admitted that he often carried the gun because he feared he would meet with "this particular person" who had made previous threats to Duff.

The defendant described his pistol as a .38-caliber semiautomatic which was loaded. After drawing his gun, the defendant fired a shot. Red then fired a shot, and the defendant fired a second shot. While the defendant fired four additional shots, Red, Truman, and Hughes attempted to enter the package portion of the lounge. One shot was fired by the defendant from the middle of the street in front of the Bali-Hi, and two were fired from the sidewalk across the street from the Bali-Hi.

Beverly Hill testified that she left the lounge after being told by the bar owner to "go outside and see about Richard." She saw the defendant standing across the street from the lounge, yelling at someone across the street from him. She joined the defendant, and together they walked away from the Bali-Hi toward her aunt's home.

Officer Felends Marion was called to the scene. When he entered the package-store portion of the Bali-Hi he found the victim lying on the floor in the rear of the store, suffering from gunshot wounds. Rescue personnel arrived and took the victim to a hospital, where he died from the wounds.

On February 15, 1985, the defendant was arrested. On the same day, a search warrant was obtained for 1615 Spencer Street, the defendant's residence. Various drug paraphernalia, spent shell casings, personal papers, and ammunition were seized during the search at 1615 Spencer Street.

The defendant moved to suppress all evidence seized at 1615 Spencer Street, alleging that the supporting affidavit lacked probable cause, contained incorrect and false information, and was procured in bad faith. The motion was overruled on February 14, 1986.

The defendant contends that the affidavit which was the basis for the search warrant failed to establish probable cause because it was based upon hearsay, did not contain a factual basis upon which the reliability of the informants' statements could be determined, and did not contain a factual basis for the affiant's belief in the credibility of the informants.

The affidavit contained a summary of the facts the police had discovered from their investigation of the shooting. The police knew that the victim had been killed by rounds fired from a .38-caliber handgun. The purpose of the search was to find the weapon and similar ammunition. Several eyewitnesses had observed the defendant at the scene, firing a gun in the direction of the Bali-Hi Lounge. The defendant had admitted to the police that he was at the scene of the crime at the time of the shooting and had talked with the victim, but denied having a gun in his possession at that time and denied that he had shot the victim.

The statements of the eyewitnesses tended to corroborate each other and, to some extent, were corroborated by the statements of the defendant to the police.

In determining probable cause for issuance of a search warrant, the issuing judge must make a practical, commonsense decision whether, given the totality of all the circumstances before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. Hoxworth*, 218 Neb. 647, 358 N.W.2d 208 (1984); *State v. Arnold*, 214 Neb. 769, 336 N.W.2d 97 (1983); *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). Only the probability, and not a prima facie showing, of criminal activity is the standard for determining probable cause. *Arnold, supra*. Where some of the underlying circumstances are detailed in the affidavit; where reason for crediting the source of the information is given, and where a magistrate has found probable cause, the duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Arnold, supra; Gates, supra*.

In *State v. Payne*, 201 Neb. 665, 670, 271 N.W.2d 350, 352

(1978), we held: "An informant's detailed eyewitness report of a crime may be self-corroborating; it supplies its own indicia of reliability; and an untested citizen informant who has personally observed the commission of a crime is presumptively reliable." *State v. King*, 207 Neb. 270, 298 N.W.2d 168 (1980). See, also, *State v. Gilreath*, 215 Neb. 466, 339 N.W.2d 288 (1983). In determining whether or not an individual is a citizen informant, *Payne* requires that the "affidavit affirmatively sets forth the circumstances from which the existence of the status can reasonably be inferred." 201 Neb. at 670, 271 N.W.2d at 353. A citizen informant has been defined as

> "a citizen who purports to be the victim of or to have been the witness of a crime who is motivated by good citizenship and acts openly in aid of law enforcement. [Citations.] It is reasonable for police officers to act upon the reports of such an observer of criminal activity. [Citations.] [¶] A 'citizen-informant' is distinguished from a mere informer who gives a tip to law enforcement officers that a person is engaged in the course of criminal conduct. [Citations.] Thus, experienced stool pigeons or persons criminally involved or disposed are not regarded as 'citizen-informants' because they are generally motivated by something other than good citizenship. [Citations.]"

*People v. Smith*, 17 Cal. 3d 845, 850-51, 553 P.2d 557, 560, 132 Cal. Rptr. 397, 400 (1976), citing *People v. Schulle*, 51 Cal. App. 3d 809, 124 Cal. Rptr. 585 (1975).

Once an individual is considered to be a citizen informant,

> " 'Reliability still must be shown, but it may appear by the very nature of the circumstances under which the incriminating information became known. Any other rule would lead to the totally unacceptable result that public-spirited citizens interested only in law enforcement could seldom furnish information sufficient to establish probable cause.' . . . 'Information supplied by a citizen who voluntarily comes forward to aid law enforcement officers is presumed to be reliable.' "

*State v. Ybanez*, 210 Neb. 42, 44, 313 N.W.2d 30, 32 (1981), citing *State v. King, supra*. Courts are willing to find citizen

informants reliable because such individuals generally have no motive to falsify. *United States v. Ross*, 713 F.2d 389 (8th Cir. 1983); *United States v. Gagnon*, 635 F.2d 766 (10th Cir. 1980), *cert. denied* 451 U.S. 1018, 101 S. Ct. 3008, 69 L. Ed. 2d 390 (1981).

In *Illinois v. Gates, supra,* the U.S. Supreme Court abandoned the "two-pronged" test, known as the *Aguilar-Spinelli* test, and adopted a more liberal "totality of the circumstances" approach. This approach does not disregard the informant's reliability, veracity, or basis of knowledge, but instead, it allows these factors to be considered as "closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." 462 U.S. at 230. The adoption of this more flexible approach requires a practical rather than technical analysis of probable cause:

"The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement."

462 U.S. at 231-32, citing *United States v. Cortez*, 449 U.S. 411, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981).

In the *Gates* case, the U.S. Supreme Court set forth the standard by which to review the sufficiency of the affidavit:

[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's "determination of probable cause should be paid great deference by reviewing courts." *Spinelli, supra,* at 419. "A grudging or negative attitude by reviewing courts toward warrants," *Ventresca,* 380 U.S., at 108, is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; "courts should not invalidate warrant[s] by interpreting

affidavit[s] in a hypertechnical, rather than a commonsense, manner." *Id.*, at 109.

. . . Reflecting this preference for the warrant process, the traditional standard for review of an issuing magistrate's probable-cause determination has been that so long as the magistrate had a "substantial basis for . . . conclud[ing]" that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more. *Jones v. United States*, 362 U.S. 257, 271 (1960).

*Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).

Shortly after the *Gates* decision, the U.S. Supreme Court further clarified the intent and the effect of its holding in *Gates*: "We did not merely refine or qualify the 'two-pronged test.' We rejected it as hypertechnical and divorced from 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " *Massachusetts v. Upton*, 466 U.S. 727, 732, 104 S. Ct. 2085, 80 L. Ed. 2d 721 (1984), citing *Brinegar v. United States*, 338 U.S. 160, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949).

This court has adopted the "totality of the circumstances" rule established by *Gates. State v. Abraham*, 218 Neb. 475, 356 N.W.2d 877 (1984); *State v. Arnold*, 214 Neb. 769, 336 N.W.2d 97 (1983); *State v. Williams*, 214 Neb. 923, 336 N.W.2d 605 (1983). Under this standard, the question is whether, under the totality of the circumstances, the issuing magistrate had a "substantial basis" for his finding that the affidavit established probable cause.

The appellant's primary assertion is that the information obtained from the witnesses and contained in the affidavit lacked proof of reliability or credibility. Pursuant to *Gates* and *Upton*, these facts do not require independent proof.

The affidavit involved in this case permits an inference that all four witnesses were citizen informants, and not police tipsters or professional informants. Each witness related that he or she was in the area of 24th and Hamilton at the time of the shooting. Witness No. 1 resided in the area and witnessed the shooting. Witness No. 2 and witness No. 3 also witnessed the event. Witness No. 4 was in the area visiting his uncle, witness

No. 1, when he observed the incident. There is nothing in the affidavit to suggest that the witnesses were anything but eyewitnesses, and thus citizen informants. They all related personal observations, not rumor or speculation. While the identities of the witnesses were not disclosed to the magistrate, their identities were known to the affiant officer. Lack of identification is not fatal to the validity of the affidavit because the credibility of each witness could be inferred from the specificity of their recollections of the events of February 8, 1985. The fact that each witness' report of the incidents of February 8 corroborates generally the reports of the other witnesses lends strong support for the credibility of the information contained in the affidavit. We have held that "[c]onstitutional policy demands that doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *State v. Payne*, 201 Neb. 665, 671, 271 N.W.2d 350, 353 (1978). Also, great deference should be paid to the issuing magistrate's determination of probable cause. *Illinois v. Gates, supra*, citing *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969).

Viewing the affidavit under the "totality of the circumstances" approach, we conclude that the issuing magistrate had a substantial basis on which to find probable cause. The evidence seized pursuant to the search was admissible.

The second assignment of error alleges that the evidence was insufficient to support appellant's conviction.

[I]t is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of the explanations, or weigh evidence. Such matters are for the trier of fact and must be sustained if, taking the view of the evidence most favorable to the State, there is sufficient evidence to support the conviction.

*State v. Nesbitt, ante* p. 32, 39-40, 409 N.W.2d 314, 318-19 (1987). See, also, *State v. Schreck, ante* p. 172, 409 N.W.2d 624 (1987); *State v. El-Tabech*, 225 Neb. 395, 405 N.W.2d 585 (1987).

The evidence of the State, if believed, was sufficient to prove

that the defendant was at the Bali-Hi Lounge on February 8, 1985, at approximately 10:30 p.m., and that he engaged in a dispute with the decedent, drew his gun, and fired numerous shots, one of which fatally injured the victim.

The defendant testified and admitted that he was carrying a gun on February 8, 1985, that he was involved in a dispute with the victim, and that he fired his gun numerous times in the vicinity of the Bali-Hi Lounge.

The judgment is affirmed.

AFFIRMED.