STATE OF NEBRASKA, APPELLEE, V. MICHAEL D. WAITS, APPELLANT.

178 N. W. 2d 774

Filed July 17, 1970. No. 37545.

Lee A. Larsen, for appellant.

Clarence A. H. Meyer, Attorney General, and Calvin E. Robinson, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ., and CHADDERDON, District Judge.

WHITE, C. J.

From a jury verdict and judgment finding the defendant guilty of unlawful possession of lysergic acid diethylamide, commonly referred to as L.S.D., the defendant appeals. The validity of the affidavit of probable cause supporting a search warrant and the scope of the search are the basic issues raised on appeal. We affirm the judgment and sentence of the district court.

The background facts upon which the affidavit of probable cause was based are as follows: The postal authorities at a South Omaha post office informed officer Carl Grossoehme, a state patrolman specializing in drug abuse, of the existence of a parcel which they considered suspicious. The postal authorities located the parcel and subsequently law enforcement officers examined the parcel without opening it. The warrant authorized a search of the defendant's premises for the purpose of discovering illegal drugs and particularly L.S.D. The package was duly delivered by postal of-

ficials. At the time, the defendant's house was under surveillance by the officers. When the package was picked up by the defendant from his mail box, the officers went to the door of the house, knocked, announced their identity, and, when no one answered, they entered. As they entered the defendant was found kneeling on the floor unwrapping the package referred to. Officer Grossoehme finished unwrapping the package which contained a plastic vial filled with white capsules. The vial was subsequently taken for analysis. No result of this first analysis was introduced, but 3 weeks prior to the trial the same vial was allegedly sent in for reanalysis. The results showed that the capsules contained L.S.D.

While in the house, a search of the entire premises was made which produced various items including letters, cannabis or marijuana, and an address book. All items were seized and subsequently introduced in evidence.

The affidavit of probable cause upon which the search warrant in this case was issued states as follows: "Affiant has information that Michael Waits is in possession of illegal drugs, including L.S.D. Affiant has received information from Sgt. John Maley of the Omaha Police Dept. and other reliable informants that said Michael Waits is associated with known users and possessors of illegal drugs, particularly one Bud Medlock, one William C. Larnan and one Thomas E. Swain and one John L. Lenczowski, that illegal drugs were found in the possession of the above named associates of Michael Waits. Affiant further states that Mr. John Bullock of the Postal Inspector's office in Omaha has advised affiant that Michael Waits has received *letters* and *packages* from *Hawaii* and *California and* has *sent money orders* to *California* which affiant *believes* to be in *connection* with the *receipt* and *possession of illegal drugs* and *particularly L.S.D.* Affiant is further informed by the Post-office Dept. that the package addressed and directed to

Michael Waits from California which is expected to contain illegal drugs is in the possession of said Michael Waits." (Emphasis supplied.)

Extensive discussions of the different holdings of the United States Supreme Court in recent cases therein are made in the briefs. It is, however, not challenged by either the State or the defendant that the following from State v. LeDent, *ante* p. 380, 176 N. W. 2d 21, is a correct summary of the law as applicable to this case: "In passing on validity of a search warrant the court may consider only information brought to the attention of the magistrate. * * * For the affidavit of a tip from an informant to be sufficient, the magistrate must be informed of (1) some of the underlying circumstances from which the informant concluded that the narcotics were located where he claimed they were, and (2) some of the underlying circumstances from which the officer concluded that the informant was credible. * * * *Affidavits for search warrants must be tested in a common sense, realistic fashion."* (Emphasis supplied.) Observations of fellow law enforcement officers of the police engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number. United States v. Ventresca, 380 U. S. 102, 85 S. Ct. 741, 13 L. Ed. 2d 684. Analyzing this affidavit, we find that an Omaha city police officer, and an official of the United States Postal Inspector's Office furnished the information which was originally relied upon. Under the above holding this must be considered a credible basis. We also examine these facts in light of the holdings of this court and the United States Supreme Court. In State v. McCreary, 179 Neb. 589, 139 N. W. 2d 362, this court, in reviewing the controlling United States Supreme Court cases, said as follows: "The case is controlled by United States v. Ventresca, 380 U. S. 102, 85 S. Ct. 741, 13 L. Ed. 2d 684, wherein it is said: 'Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his

detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.' "

Turning now to the supporting holding in United States v. Ventresca, *supra,* we find the following pertinent as to the standards and attitude of interpretation in examining probable cause for the issuing of a warrant. In Ventresca, the United States Supreme Court said as follows: "These decisions reflect the recognition that the Fourth Amendment's commands, like all constitutional requirements, *are practical and not abstract.* If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. *They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specifity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude* by reviewing courts towards warrants will *tend to discourage* police officers from submitting their evidence to a judicial officer before acting." (Emphasis supplied.) We feel that further detailed analysis of the affidavit is unnecessary. It appears obvious that if the affidavit is construed in a common sense manner, it reveals probable cause for believing that the defendant was in the possession of illegal drugs, and to hold that the magistrate under the situation present, and with the

detailed nature of the information furnished in the affidavit would not be authorized under the Fourth Amendment to issue a search warrant, would emasculate law enforcement. There is no merit to the contention that the search warrant was improperly issued or that the affidavit for probable cause did not furnish a sufficient foundation therefor.

We are mindful of the fact that the United States Supreme Court for over 60 or 70 years has stated that the great and most important thrust of the Fourth Amendment is that the interpositions of a judicial judgment by a magistrate or a judge, before a search is conducted, are the most important elements in enforcing the command of the Fourth Amendment and its objective of preventing indiscriminate and arbitrary general searches by the government. We are not required to pass upon the question of whether a warrantless search was authorized. However, it is obvious in the recital of the background facts together with the information furnished in the affidavit that there were at least facts to authorize a warrantless search irrespective of the affidavit or arrest. A further recital of the facts in the later portions of this opinion also substantiate the significant reliability of the officials' information that supported the fact recitals in the affidavit of probable cause.

It is true that the probable cause standard must be met prior to the search. At the same time, the detailed and completely accurate information flowing logically from the original information furnished in the affidavit for probable cause, shows conclusively in this case that there were none of the elements of police arrogance, overreaching, or broom-sweeping general search that is condemned by the Fourth Amendment. There is no merit to this contention.

We now turn to the second major thrust of the defendant's argument and that is that the law officers who executed the search warrant went beyond the scope of the warrant and that those items of evidence which were

beyond the scope should have been excluded from the evidence by the trial court. The warrant, issued on the basis of the affidavit, states as follows: "You are therefore commanded, with the necessary and proper assistance, to search the following described place or person, to-wit: 7102 So. 23d St., Omaha, Sarpy, County, Nebraska, legally described as Lot 214 Chandler Hills, an Addition, as surveyed, platted and recorded in Sarpy County, Nebraska, and the person of Michael Waits and Betty Eona for the purpose of discovering and seizing the following described property, to-wit: illegal drugs, and particularly L.S.D., technically known as Lysergic acid diethylamide and if found, to seize and deal with the same as provided by law, and to make return of this warrant to me within ten days after the date hereof."

As we analyze the defendant's argument, it is based primarily upon the cases of United States v. Lefkowitz, 285 U. S. 452, 52 S. Ct. 420, 76 L. Ed. 877; and Gouled v. United States, 255 U. S. 298, 41 S. Ct. 261, 65 L. Ed. 647. There is language in these cases which suggests that a search, whether or not pursuant to a warrant, may not be conducted for purposes of finding items of value merely as evidence in a criminal prosecution. However, this "mere evidence" rule was expressly rejected by the United States Supreme Court in Warden, Maryland Penitentiary v. Hayden, 387 U. S. 294, 87 S. Ct. 1642, 18 L. Ed. 2d 782. We have examined the other cases cited by the defendant and they are not in point. In Gurleski v. United States, 405 F. 2d 253, the warrant was issued for the seizure of certain items of audio-visual equipment. While making the search, the officers discovered items such as pieces of paper with telephone numbers on them, a checkbook, a hotel receipt, and a motor vehicle certificate of title, all relating to a previously unsuspected automobile theft. This evidence was held to be admissible, the court saying: "The search much be one directed in good faith toward the objects specified in the warrant or for other means and instru-

mentalities by which the crime charged had been committed. It must not be a general exploratory search through which the officers merely hope to discover evidence of wrongdoing." In Skelton v. Superior Court of Orange County, 81 Cal. Rptr. 613, 460 P. 2d 485, the police conducted a two-hour search under a warrant specifying certain items of stolen property. In the course of the search, other purportedly stolen items were discovered. The California court, and we note that California has been the leading state jurisdiction in expanding the reach of the Fourth Amendment, stated as follows: "When officers, in the course of a bona fide effort to execute a valid search warrant, discover articles which, although not included in the warrant, are reasonably identifiable as contraband, they may seize them whether they are initially in plain sight or come into plain sight subsequently, as a result of the officers' efforts."

With the above rules in mind we now go to a detailed examination of the evidence in this respect. The police officers who were to execute the warrant waited until a certain package had been delivered in the mail and personally received by the defendant. Then they knocked on the door of the subject premises and announced that they were police officers with a search warrant. Having received no answer, they opened the door and entered. Almost immediately, they observed the defendant kneeling on the floor in the living room, with the above-mentioned package in his hands. The package was seized. It had a brown paper covering showing the following return address: "Kathe Cunha 20836 Woodside Rd. Van Nuys, Calif." The postmark on the wrapper indicated that the package had been mailed from "LaGuna Beach, Calif." Inside the brown wrapper was a second wrapper showing a printed birthday motif and a small circular tag with the following words (exhibit 5): "-Michael & Sandy with Love - Kathe & J-." After all of the wrappings had been re-

moved, the police officers discovered a box (exhibit 2), and inside that, a vial containing capsules which were later identified and examined as containing L.S.D. (exhibit 9). Also found inside the box was a small piece of paper (exhibit 10) containing the following notation:

"110 Doses of Divine Sacroment

$2.50 _____ Better Than

$2.75 _____ Any of the

Tabs. (except, maybe,

*(Be sure to take* the little blue

*some!!* barrels) ___" (Emphasis supplied.)

Also found inside an envelope was a letter containing the following language: "I hope your birthday present will be able to help you out until you hear from Jerome. Please return the $ immediately. Thank you -." These items of evidence were all clearly within the scope of the purpose of the warrant. They were on the premises mentioned in the search warrant, were within the immediate personal control and reach of one of the individuals who was named in the warrant. The vial of capsules was within the warrant's language concerning "illegal drugs" and L.S.D. was specifically mentioned in the warrant. The other items related to the manner in which these capsules had come into the defendant's possession and to the defendant's knowledge concerning the nature of the capsules. Taken together they almost conclusively suggest that the defendant knew that the capsules would be sent to him and even that he had agreed to pay for the capsules. We hold that these items and the exhibits representing them were admissible in evidence and clearly not within the scope of immaterial evidence which would constitute an invasion of the area of privacy or a general search.

We now go to the objection of exhibit 18, which was an address book found in a bedroom in the house. It is true that most of this address book would seem completely immaterial as argued by the defendant, but listed on "J" page was found the following entry:

"Jamie Kathie Cunha
59007 Huelo St.
Sunset Beach, Hawaii 96712."
The defendant moved for the exclusion of this exhibit and this address book and the trial court very properly agreed that only the above page should be presented to the jury. However, it was the defendant, himself, who decided to permit the admission of the whole book, although apparently retaining his objection to the Cunha entry itself. It is obvious that the defendant waived his objection to the introduction into evidence to the balance of the book. We point out further that we can find nothing prejudicial in this situation that would warrant a reversal of the judgment in this case. We point out further that the entry in the book relates to the crime of possession of L.S.D. because it confirmed the association with the persons who had actually sent the L.S.D. package and birthday letter that we have recited in detail heretofore. It also obviously relates to the question of defendant's knowledge of the contents of the package of L.S.D.

Finally the defendant alleges that several other items of evidence were obtained as the result of the subject search and seizure and beyond the scope of the warrant and constituted a general search. The record does not establish that these objections were presented to the trial court. The court overruled the motion to suppress that was filed prior to the trial and did not state the specific factual and legal issues raised by the defendant in his motion to suppress. The record does not show the objections made to the trial court at the time of the motion to suppress of these items. The items which we have discussed previously were the only ones to which objection was taken at the time of the trial. No objection was taken at the time of the trial to offer of exhibits 1, 2, and 5 which are now attacked. The defendant could, of course, have objected at trial to each item of evidence, as the court held in State v. Smith, 184 Neb.

363, 167 N. W. 2d 568, but apparently as a matter of trial strategy chose not to do so. The record shows that the trial court afforded the defendant a complete evidentiary hearing on the motion to suppress and that he was given full opportunity to make such objections as he deemed important, both at the time of the hearing on the motion to suppress and, of course, later at the time of the trial. There is nothing in the record to show any appropriate challenge to the scope of the search concerning exhibits 1 through 8 in this case. Again we point out that the defendant made no objections at the time of the trial to the introduction of exhibits 1 through 8. It is obvious that error cannot be predicated upon the reception by the trial court of these items in evidence. We point out further that exhibits 12, 13, 14, 15, 16, 17, and 17A were excluded from the evidence on defendant's objection. It shows a careful and conscientious attention on the part of the trial court to protect the defendant's rights and to properly limit the introduction of testimony on these exhibits.

The defendant argues insufficient foundation was made for exhibit 9, in that the State failed to show a continuous chain of custody thereof from the time of the seizure to the date of its introduction at the time of the trial. In State v. Allen, 183 Neb. 831, 164 N. W. 2d 662, this court held, in conformity with our previous cases, that a trial court's determination of the admissibility of demonstrative evidence will not be overturned except for a clear abuse of discretion. An absolute mathematical tracing of identification every second of the time, of course, is almost always impossible. A certain amount of discretion is vested in the trial court, remembering at all times, that the State must still have to meet the test of the same argument before the fact finders in the final determination of this issue. We have examined the record, and find no abuse of discretion by the trial court in admission of exhibit 9.

There is no merit to the contentions of the defendant,

and the judgment and sentence of the district court are correct and are affirmed.

AFFIRMED.