STATE OF NEBRASKA, APPELLANT, V.
RUTH KING, APPELLEE.

298 N.W.2d 168

Filed October 31, 1980.   No. 43637.

Charles D. Brewster for appellant.

Gary L. Hogg for appellee.

Heard before KRIVOSHA, C.J.

KRIVOSHA, C.J.

This appeal is made to a single judge of the Supreme Court of Nebraska pursuant to the provisions of Neb. Rev. Stat. § 29-824 (Reissue 1979). The appellee, Ruth King, was charged with a violation of Neb. Rev. Stat. § 28-416(3) (Reissue 1979) in that it is alleged she did feloniously, unlawfully, and knowingly or intentionally possess a controlled substance other than marijuana, to wit: phenobarbital. Following the filing of the complaint, the appellee filed a motion to suppress, maintaining that the affidavit upon which the search warrant was issued was defective and insufficient to adequately advise the magistrate of facts sufficient to determine that there was probable cause to issue the warrant. The affidavit presented to the county judge was prepared by a member of the Nebraska State Patrol drug division.

In part, the affiant recited that he "received a message from one Marshall Nelson, Chief of Security at Kearney State College. . . . Chief Nelson advised that three concerned citizens contacted him and advised that within the last five days they had observed small,

round, white pills and a marijuana pipe in a desk in Room 747, Centennial Towers East, Kearney State College, Kearney, Buffalo County, Nebraska. . . . " and that the pills and marijuana pipe belonged to Ruth King. Also, the same individuals advised Chief Nelson that in the closet in Room 747 was located a yellow Antelope Book Store plastic bag containing marijuana. The affidavit then recited that the investigator contacted one of the concerned citizens who advised the investigator exactly where the white pills and the marijuana pipe were located within the room. The individual also advised the investigator that the marijuana in the yellow plastic Antelope Book Store bag was located in the closet. The affidavit further recited that the individual had detected the odor of burning marijuana in the hallways in the vicinity of Room 747 and that the defendant, Ruth King, had indicated to the concerned citizen that she, Ruth King, was drying and "manicuring" marijuana in the clothes dryers that are located in the dormitory at Kearney State College.

Following a hearing in the District Court for Buffalo County, Nebraska, the trial court sustained the motion to suppress. In reaching its conclusion, the trial court advised counsel in open court that in the court's opinion the affidavit for the search warrant did identify the item marijuana. The court said, "But I think maybe as to description, the fact that identifies the drug as marijuana is sufficient to free the affidavit from the question of description of an unlawful drug. The problem that confronts me as I listen to the evidence is different than that. I have no problem with the affidavit with regard to the sufficiency and in the fact that it does describe a controlled substance. And it does describe the controlled substance together with other possible drugs in the possession of the defendant in the certain specific location. The problem that I have is beyond that and I was reading the motion to suppress to see if it goes to that. I have resolved that the mo-

tion to suppress does include the sufficiency of the affidavit to support the search warrant in a general sense. The testimony has been that the information is based upon informants, and not upon the observation of the applicant for a search warrant. . . . I find nothing in the affidavit which would indicate anything to indicate the reliability of the informants upon which the charge is based." The trial court apparently concluded that there was sufficient information in the affidavit to indicate and describe an unlawful drug but that the reliability of the informants was insufficient. We believe, however, that such is not the case under the circumstances and that the order of the trial court sustaining the motion to suppress must be reversed.

In beginning our review, we keep in mind the declaration set forth by the U.S. Supreme Court in *Aguilar v. Texas*, 378 U.S. 108, 111, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), wherein it is said: "Thus, when a search is based upon a magistrate's, rather than a police officer's, determination of probable cause, the reviewing courts will accept evidence of a less 'judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant,' [citation omitted] and will sustain the judicial determination so long as 'there was substantial basis for [the magistrate] to conclude that narcotics were probably present . . . .' [Citation omitted.]"

In the case of *State v. Payne*, 201 Neb. 665, 670, 271 N.W.2d 350, 352 (1978), we pointed out that: "An informant's detailed eyewitness report of a crime may be self-corroborating; it supplies its own indicia of reliability; and an untested citizen informant who has personally observed the commission of a crime is presumptively reliable." We cited in support of that proposition the cases of *United States v. Simmons*, 444 F. Supp. 500 (E.D. Pa. 1978); *People v. Schulle*, 51 Cal. App. 3d 809, 124 Cal. Rptr. 585 (1975); and

*State v. Drake,* 224 N.W.2d 476 (Iowa 1974).

In *United States v. Sellaro,* 514 F.2d 114 (8th Cir. 1973), *cert. denied,* 421 U.S. 1013, 95 S. Ct. 2419, 44 L. Ed. 2d 681 (1975), the U.S. Court of Appeals for the Eighth Circuit, in addressing the issue of what is required to establish the reliability of a citizen informant, said: "This Court has held that the statement of an eyewitness to a crime supplies its own indicia of reliability as a statement of facts rather than conclusions which must be tested to determine their factual basis. McCreary v. Sigler, 406 F.2d 1264, 1269 (8th Cir.), cert. denied, 395 U.S. 984, 81 S.Ct. 2149, 23 L.Ed.2d 773 (1969). Accord, United States v. Evans, 447 F.2d 129 (8th Cir. 1971); United States v. Mahler, 442 F.2d 1172 (9th Cir.), cert. denied, 404 U.S. 993, 92 S.Ct. 541, 30 L.Ed.2d 545 (1971)." Additional cases supporting these views are *State v. Perry,* 499 S.W.2d 473 (Mo. 1973); *State v. Lindquist,* 295 Minn. 398, 205 N.W.2d 333 (1973); *State v. Paszek,* 50 Wis. 2d 619, 184 N.W.2d 836 (1971).

It is clear from a reading of the reported cases that the requirements for establishing the reliability of a police informer are not required when dealing with a citizen informer who has witnessed the alleged crime. In *State v. Drake, supra,* the Iowa court said: "When considering the sufficiency of probable cause based on information supplied by an informant, it is important to distinguish the police tipster, who acts for money, leniency, or some other selfish purpose, from the citizen informer, whose only motive is to help law officers in the suppression of crime. . . .

"In the latter the rule of prior reliability is considerably relaxed for several reasons. In the first place the citizen informer has rarely had any earlier experience in reporting suspected criminal activity. Furthermore, unlike the professional informant, he is without motive to exaggerate, falsify or distort the facts to serve his own ends.

"Reliability still must be shown, but it may appear by the very nature of the circumstances under which the incriminating information became known. Any other rule would lead to the totally unacceptable result that public-spirited citizens interested only in law enforcement could seldom furnish information sufficient to establish probable cause." *Id.* at 478.

We believe the reasoning of the Iowa court to be valid and would ourselves adopt such a positon. Likewise, in the case of *State v. Diffenderfer*, 120 Ariz. 404, 406, 586 P.2d 653, 655 (Ariz. App. 1978), it was said: "Information supplied by a citizen who voluntarily comes forward to aid law enforcement officers is presumed to be reliable. *People v. Hill*, 12 Cal.3d 731, 117 Cal.Rptr. 393, 528 P.2d 1 (1974)." We believe that the affidavit in this case sufficiently advised the county judge that the information was based upon the eyewitness observations of three citizen informants who are, therefore, presumed to be reliable.

The other question which apparently did not trouble the trial court, but which perhaps deserves some consideration, is whether there was a sufficient basis upon which the magistrate issuing the warrant could believe that the eyewitnesses knew what they were seeing. To be sure, the information with regard to the "small, round, white pills" was perhaps insufficient. As argued by the appellee, those pills may very well have been prescription drugs or saccharin or anything of the like. In that regard, the information was insufficient. However, with regard to the matter of marijuana and the marijuana pipe, the affidavit was sufficient. The informants recited that they had personally observed the items and unhesitatingly described them as marijuana and a marijuana pipe. Certainly, the better practice would be for the affidavit to recite how and by reason of what circumstances the citizen informant is qualified to identify the observed item as marijuana and we would encourage those preparing

affidavits to do so. The absence of that statement under the circumstances in this case is not, however, fatal.

As we said in *State v. Payne, supra* at 668, 271 N.W.2d at 352, "It has been well established that affidavits for search warrants such as the one involved here must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. Recital of some of the underlying circumstances in the affidavit is essential. Where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the court should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a common-sense manner."

And in the case of *State v. Drake, supra,* the Iowa court was called upon to consider whether or not statements by an eyewitness that a private apartment contained racks of new clothing all still bearing identification and price tags from local stores, together with a specific description and a number of the garments, raises more than a mere suspicion and justifies issuing a search warrant. In holding that it was sufficient, the Supreme Court of Iowa said: "The presence of such property in a private residence in that quantity and in that condition is so unusual and so incriminating that it not only justifies 'the belief of a man of reasonable caution that an offense has been or is being committed' but makes it difficult to see how such a person could reach any other conclusion." *Id.* at 479.

And in the *Diffenderfer* case, *supra* at 406, 586 P.2d at 655, the Arizona court, speaking of identifying the drug said: "As for her identification of the plants, we agree with the reasoning expressed by the court in *Dishman v. State,* 3 Tenn. Cr. App. 725, 460 S.W.2d 855 (1970): 'To be positive that the material delivered

to the defendant was marijuana, a chemical examination would be required. Many common plants look like it. Before he can obtain a search warrant, however, the agent is not required to have the information the search warrant would disclose. Proof of the probability and not of the crime is all that is required.' 460 S.W.2d at 858. *See also United States v. Shipstead*, 433 F.2d 368 (9th Cir. 1970), holding that a search warrant affidavit need not allege how the informant knew the drug in that case was methamphetamine."

We believe that it is reasonable to assume that one who sees a quantity of dried plant material in a bookstore bag in a closet, who has seen a marijuana pipe in a desk drawer, who is familiar with the odor of burning marijuana, and who has been told by an individual in whose room the bag and the pipe are found that the individual has had contact with marijuana and that, at other times, the individual has been drying and "manicuring" marijuana, might reasonably conclude that the plant which the individual saw and which resembled marijuana was, indeed, marijuana. We believe that to require more of the magistrate would be to require proof of the guilt of the crime rather than probable cause to believe that a warrant should be issued. While the requirements of the fourth amendment to the Constitution of the United States must be zealously guarded, we do not believe that the fourth amendment requires proof beyond a reasonable doubt.

Having validly obtained a search warrant which included the right to search the desk drawer where the marijuana pipe was located, the police were justified in seizing the white pills under the "plain view" doctrine. Specifically addressing the issue, the U.S. Supreme Court in *Coolidge v. New Hampshire*, 403 U.S. 443, 465, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971), said: "An example of the applicability of the 'plain view' doctrine is the situation in which the police have a warrant to search a given area for specified objects,

and in the course of the search come across some other article of incriminating character." In that regard, therefore, we believe that the order of the trial court in suppressing the evidence was in error and the judgment of the trial court must be reversed.

REVERSED.