STATE OF NEBRASKA, APPELLEE, V.
LLOYD L. TRAXLER, APPELLANT.

315 N.W.2d 440

Filed January 22, 1982. No. 44424.

P. J. Heaton, Sr., for appellant.

Paul L. Douglas, Attorney General, and Mark D. Starr for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

CLINTON, J.

The appellant, Lloyd L. Traxler, was convicted before a jury in the District Court for Cheyenne County of possession of a short shotgun as prohibited by Neb. Rev. Stat. § 28-1203(1) (Reissue 1979), which states: "Any person or persons who shall transport or possess any machine gun, short rifle, or short shotgun commits a Class IV felony." Although the appellant makes several assignments of error, the only assignment argued in his brief addresses the alleged unconstitutional seizure of a short shotgun seized in a search conducted pursuant to a warrant which authorized a search for drugs and drug paraphernalia, and, therefore, we need only address that issue. Neb. Ct. R. 8.a.2.(3) (Rev. 1977). The trial court overruled the appellant's motion to suppress the shotgun as evidence resulting from an illegal search and seizure. After the appellant was found guilty, he was sentenced to a term of 20 months to 5 years in the Nebraska Penal and Correctional Complex and fined $5,000 in addition to costs.

The facts, as revealed by the evidence surrounding the events leading to the appellant's conviction, are as follows. On August 30, 1980, the appellant's residence at 928 7th Avenue, Sidney, Nebraska, was searched pursuant to a warrant authorizing the search for drugs and drug paraphernalia. During the course of the search, several marijuana pipes or bongs and a small

amount of marijuana were discovered in the residence. In addition to these items, a short shotgun was found underneath a couch in the living room. "Short shotgun shall mean a shotgun having a barrel or barrels less than eighteen inches long or an overall length of less than twenty-six inches." Neb. Rev. Stat. § 28-1201(6) (Reissue 1979). The short shotgun in this case was a Savage Model 220, single-barrel, .12-gauge shotgun with a 12½-inch barrel and an overall length of 21½ inches.

On August 20, 1980, the appellant Traxler purchased from Cabela's Sporting Goods in Sidney a standard-length Savage Model 220, single-barrel, .12-gauge shotgun. The uncontroverted testimony of Larry Walker, a friend of the appellant, revealed that Walker and Traxler had planned to use the gun to rob drug dealers who, according to Walker, had "burnt him [Traxler] on some stuff down in Colorado." Walker further testified that Traxler was responsible for the cutting, filing, and taping of the gun, although Walker had helped steady the gun while Traxler sawed. Contrary to this testimony, the appellant's brother, David Traxler, who was present at the time the gun was shortened, testified it was Walker who started to cut the shotgun. But the brother later refers to the cutting process as a joint effort. It is clear from the record that the appellant was integrally involved in the preparation of the short shotgun, and, in any case, it is possession, not the manufacture, of the short weapon which is germane to the statutory offense.

While the finishing touches were being placed on the altered weapon, the police arrived with a warrant for Walker's arrest on a charge unrelated to this appeal. Walker momentarily evaded the police, but was soon arrested, leaving the gun in the appellant's custody. David Traxler testified the appellant directed another brother, John, to dispose of the weapon. However, Robin Plunkett, a witness for the defense, claimed he found the short shotgun in a box while helping the appellant

move to the residence at 928 7th Avenue on August 20, 1980, the same day appellant purchased the gun from the sporting goods store. Plunkett also claimed it was he, Plunkett, who placed the gun under the couch without anyone else's knowledge.

As was earlier stated, the only issue appellant raises in this appeal concerns the constitutionality of this particular search and seizure. The appellant alleges the police went beyond the authority granted in the search warrant to search for drugs and drug paraphernalia, making a general search of the residence for evidence of any crime. A general search for evidence of any crime is prohibited by the fourth amendment to the U.S. Constitution and article I, § 7, of the Constitution of Nebraska, both of which provide that probable cause be shown before the search may occur.

In support of his position, the appellant urges that two of the police officers executing the warrant made statements in the record from which it could be inferred that a general search was being made. Even if it be assumed that the statements could change the nature of the search from a valid search under warrant to a general search, it is clear from an examination of the record of the suppression hearing that the evidence warranted the trial judge's arrival at a different conclusion as to what the officers were saying. Their testimony very clearly states that they were searching for drugs and drug paraphernalia only and were not searching for or expecting to find anything else. The appellant takes their statements out of context. One officer's statement admitting he made a general search and the other officer's statement admitting he was looking for "anything else that he could find" would seem simply to refer to the thoroughness of the search throughout the entire house, a thoroughness which would be necessitated and expected in a hunt for drugs. We are bound by the trial judge's factual determinations. As was stated in *State v. Waits*, 185 Neb. 780, 786-87, 178 N.W.2d 774, 779 (1970), "'The search must be one

directed in good faith toward the objects specified in the warrant or for other means and instrumentalities by which the crime charged had been committed. It must not be a general exploratory search through which the officers merely hope to discover evidence of wrong-doing.'" Evidence exists in the record to support the finding that the search and seizure in this case was con-ducted in good faith and did not amount to a general exploratory search.

The appellant further relies upon the case of *State v. Tara Enterprises, Inc. and Zachary Productions, Ltd.*, 202 Neb. 260, 274 N.W.2d 875 (1979); however, the issue in that case is not relevant to the case at bar. In *Tara Enterprises*, this court held that legally seized items specifically authorized in a warrant would not be sup-pressed because police had seized other items outside the authorized scope. The appellant is concerned with the suppression of evidence *not* specifically authorized in the warrant.

Finally, the appellant argues that in order for a warrant to be valid it must describe with particularity the item to be seized. The appellant relies upon the following: "The right of the people to be secure in their persons, houses, papers, and effects, against unreason-able searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, sup-ported by Oath or affirmation, and particularly de-scribing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "A warrant shall issue only on affidavit sworn to before the judge or magistrate and establishing the grounds for issuing the warrant. If the judge or magistrate is satisfied that grounds for the application exist or that there is probable cause to believe that they exist, he shall issue a warrant identifying the property to be seized and naming or describing the person or place to be searched." Neb. Rev. Stat. § 29-814 (Reissue 1979). "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and

seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized." Neb. Const. art. I, § 7. The appellant concedes the warrant was valid for the search and seizure of drugs and drug paraphernalia, but complains it did not authorize the seizure of the gun. Granted, the warrant in this case did not specifically describe and authorize the search and seizure of weapons, but the appellant has failed to recognize the application of the "plain view" doctrine to this situation. "'An example of the applicability of the "plain view" doctrine is the situation in which the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character.'" *State v. King*, 207 Neb. 270, 277-78, 298 N.W.2d 168, 172 (1980), citing *Coolidge v. New Hampshire*, 403 U.S. 443, 465, 91 S. Ct. 2022, 29 L. Ed 2d 564 (1971). As Mr. Justice Stewart stated in *Coolidge*, "What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused." 403 U.S. at 466. Therefore, the significant question in cases such as these is whether the police were justifiably present at the searched premises. Even the appellant in his brief admits the affidavit and warrant were adequate to permit the police entrance into his residence. The fact that the weapon was not specifically described in the warrant is irrelevant when the police discovered it during a permissible search. "'When officers, in the course of a bona fide effort to execute a valid search warrant, discover articles which, although not included in the warrant, are reasonably identifiable as contraband, they may seize them whether they are initially in plain sight or come into plain sight subsequently, as a result of the officers' efforts.'" *State v. Waits*, 185 Neb. 780, 787, 178 N.W.2d 774, 779 (1970). As such, we find

the conviction and sentence are affirmed.

AFFIRMED.